**MILLER STRUCTURES, INC., Petitioner,**

v.

**INDIANA STATE BOARD OF TAX COMMISSIONERS, Respondent.**

No. 49T10–9701–TA–67.

Tax Court of Indiana.

March 26, 2001.

Publication Ordered April 24, 2001.

944

**946**

David L. Pippen, Indianapolis, IN, Attorney for Petitioner.

Steve Carter, Attorney General of Indiana, Joel Schiff, Deputy Attorney General, Indianapolis, IN, Attorneys for Respondent.

FISHER, J.

■■■ Miller Structures, Inc. (Miller) appeals the State Board of Tax Commissioners' (State Board) final determinations that assessed its properties as of the March 1, 1991 and the March 1, 1992 assessment dates. Miller presents the following issues for this Court's review on appeal, which the Court restates as:

I. whether the State Board exceeded its statutory authority in its final determinations on Miller's 133 and 131 petitions because the hearing officers did not receive written prescriptions of duties;

II. whether the State Board's final determination on Miller's 133 Petition that Miller's building on Parcel One was not entitled to a grade or kit building adjustment is supported with substantial evidence; and

III. whether the State Board's final determinations on Miller's 131 Petitions that Miller was not entitled to kit building adjustments, reductions in grade, or obsolescence depreciation adjustments are supported by substantial evidence.[1]

## FACTS AND PROCEDURAL HISTORY

Miller owns two parcels of real estate in Elkhart County, Indiana. Each parcel has improvements on it. The parcels are num-

---

**1.** Miller also argues that the State Board's findings of fact were insufficient in its case. It is true that the State Board's decision will be reversed if it fails to make any findings as to evidence rebutting the taxpayer's prima facie case. *Canal Square Ltd. Partnership v. State Bd. of Tax Comm'rs*, 694 N.E.2d 801, 805 (Ind.Tax Ct.1998). However, in order to invoke this requirement, the taxpayer must first present a prima facie case. *Id.* As discussed *infra*, Miller has not presented a prima facie case with regard to its kit building adjustment, grade reduction, or obsolescence adjustment arguments in order to trigger the State Board's duty to support its decisions with substantial evidence. Therefore, this contention by Miller is without merit.

Miller also raises the issue of whether the State Board's assessment regulations violate the Indiana Constitution. This Court has recognized that the fact that the subject improvement was assessed under an unconstitutional regulation does not mean that the assessment will be invalidated on that basis. *Whitley*

*Prods., Inc. v. State Bd. of Tax Comm'rs*, 704 N.E.2d 1113, 1121 (Ind.Tax Ct.1998), *review denied; See also White Swan Realty v. State Bd. of Tax Comm'rs*, 712 N.E.2d 555, 559 (Ind.Tax Ct.1999), *review denied; Phelps Dodge v. State Bd. of Tax Comm'rs*, 705 N.E.2d 1099, 1104 (Ind.Tax Ct.1999), *review denied.* "Real property must still be assessed, and, until the new regulations are in place, must be assessed under the present system." *Whitley Prods.*, 704 N.E.2d at 1121; *See also Town of St. John v. State Bd. of Tax Comm'rs*, 729 N.E.2d 242, 250–251 (Ind.Tax Ct.2000). This means that a taxpayer cannot come into court, point out the inadequacies of the present system and obtain a reversal of an assessment. *Whitley Prods.*, 704 N.E.2d at 1121. Instead, the taxpayer must come forward with probative evidence relating to the issue the taxpayer raises. *Id.* Therefore, Miller's argument that the final determination should be reversed simply because the regulations are unconstitutional cannot prevail.

bered 01–05–24–100–021 (Parcel One) and 01–05–24–100–002 (Parcel Two). On April 30, 1992, Miller filed a Form 133 Petition for Correction of Error (133 Petition) for Parcel One with the State Board for 1991 claiming that the building in question was metal and that the assessing officials did not take that into consideration when computing its assessment. In addition, on June 15, 1993, Miller filed Form 131 Petitions for Review of Assessment (131 Petition) with the State Board for both Parcels One and Two for 1992 claiming that the incorrect base rate was used and the incorrect amount of obsolescence depreciation was applied to both parcels. On March 22, 1996, the State Board held a hearing on both 131 Petitions. A hearing was not held on the 133 Petition.

On November 22, 1996, the State Board issued final determinations on all three of the challenged assessments. Its final determination regarding the March 1, 1991 assessment of Parcel One concluded that the parcel did not qualify for a kit building adjustment. The State Board's final determination regarding the March 1, 1992 assessment of Parcel Two concluded in relevant part that while the light manufacturing structure was not entitled to a kit building adjustment it should be graded a C–2, that the light warehouse building qualified for the kit adjustment, that the assessment did not violate the Indiana Constitution, and that no obsolescence depreciation should be granted. The State Board's final determination regarding the March 1, 1992 assessment of Parcel One concluded in relevant part that the structure was not entitled to a kit building adjustment, that the proper grade of the structure was C–2, that the assessment did not violate the Indiana Constitution, and that the structure was not entitled to obsolescence depreciation.

On January 6, 1997, Miller filed its original tax appeal in this Court. A trial was held on December 18, 1998. Additional facts will be provided as necessary.

## ANALYSIS AND OPINION

### Standard of Review

■■■ This Court gives final determinations of the State Board great deference when the State Board acts within the scope of its authority. *Freudenberg–NOK General Partnership v. State Bd. of Tax Comm'rs*, 715 N.E.2d 1026, 1028–29 (Ind. Tax Ct.1999). Accordingly, this Court reverses final determinations of the State Board only when they are unsupported by substantial evidence, are arbitrary or capricious, constitute an abuse of discretion, or exceed statutory authority. *Id.* at 1029.

■■■ In addition, a taxpayer challenging the validity of the State Board's final determination bears the burden of demonstrating the invalidity of the final determination. *Clark v. State Bd. of Tax Comm'rs*, 694 N.E.2d 1230, 1233 (Ind.Tax Ct.1998). The taxpayer must present a prima facie case, which is a case in which the evidence is "sufficient to establish a given fact and which if not contradicted will remain sufficient." *Damon Corp. v. State Bd. of Tax Comm'rs*, 738 N.E.2d 1102, 1106 (Ind.Tax Ct.2000) (citations and internal quotation marks omitted). The taxpayer must offer probative evidence concerning the alleged error to establish a prima facie case. *King Indus. v. State Bd. of Tax Comm'rs*, 699 N.E.2d 338, 343 (Ind. Tax Ct.1998); *Whitley Prods., Inc. v. State Bd. of Tax Comm'rs*, 704 N.E.2d 1113, 1119 (Ind.Tax Ct.1998), *review denied.* "Once the taxpayer carries the burden of establishing a prima facie case, the burden shifts to the State Board to rebut the taxpayer's evidence and justify its decision with substantial evidence." *Clark*, 694

N.E.2d at 1233. The State Board must do more than merely assert that it assessed the property correctly to carry its burden. *Loveless Const. Co. v. State Bd. of Tax Comm'rs*, 695 N.E.2d 1045, 1049 (Ind.Tax Ct.1998), *review denied.* Instead, the State Board must offer an authoritative explanation of its decision to rebut the taxpayer's prima facie showing. *Id.*

## Discussion

### I. Hearing Officers

The first issue is whether the State Board exceeded its statutory authority in its final determinations on Miller's 133 and 131 petitions because the hearing officers did not receive written prescriptions of duties. Miller contends that neither hearing officers Edward Airhart nor Mary Ann Boulac received any written prescription of duties.[2]

When the State Board receives a petition for review, it is required to conduct a hearing at its earliest possible opportunity. IND. CODE ANN. § 6–1.1–15–4(a) (West 2000). *See also Hoogenboom–Nofziger v. State Bd. of Tax Comm'rs*, 715 N.E.2d 1018, 1021 (Ind.Tax 1999). The State Board has the authority to, by written order, appoint a hearing officer to conduct the hearing. IND. CODE ANN. §§ 6–1.1–30–11(a) & 4–22–5–1 (West 2000). In that appointment order, the State Board is required to prescribe the duties of the hearing officer. IND. CODE ANN. §§ 6–1.1–30–11(a) & (b) & 4–22–5–1. At trial, Airhart testified that the State Board appointed him by means of a written order, but did not prescribe his duties and obligations as a hearing officer over this particular matter. (Trial Tr. at 7–8.) Boulac testified that she was assigned to the cases via an existing contract that she had with the

State Board and that the State Board provided her with a format and guidelines to follow. (Trial Tr. at 17.)

▪▪ While the State Board may not have followed the proper procedures here, there is no evidence presented by Miller and this Court has found no evidence that Miller objected to the authority of either Airhart or Boulac to hear its appeals at the administrative level. In original tax appeals, the general rule is that the Court is bound by the issues and evidence raised at the administrative level. *Hoogenboom–Nofziger*, 715 N.E.2d at 1022. Therefore, where a taxpayer fails to raise an issue at the administrative level, the issue is waived and may not be considered by the Court. *Id.* Miller's failure to object constituted its acceptance of Airhart and Boulac as having the authority to act as hearing officers. Therefore, Miller has waived this issue and may not raise it for the first time on appeal to this Court. *See id.*

### II. The 133 Petition

The second issue is whether the State Board's final determination on Miller's 133 Petition that Miller's building on Parcel One was not entitled to a grade or kit building adjustment is supported by substantial evidence. Miller seems to argue that the State Board should have applied either a kit building adjustment or a grade adjustment to the building because part of the building was made of metal.

At the State Board level, Miller simply asserted on its 133 Petition: "Metal Bldg. Correction Should Be Applied." (Joint Ex. 1, Ex. A.) No formal hearing was held, but the State Board's hearing officer, Airhart, inspected the exterior of the building. (Trial Tr. at 8.) Apparently assuming that Miller's statement on the 133

---

**2.** Airhart was the hearing officer for the 133 Petition. (Trial Tr. at 7.) Boulac was the hearing officer for the 131 Petitions. (Trial Tr. at 28.)

Petition was a request for a kit building adjustment, Airhart determined that the building was not entitled to a kit building adjustment because it had concrete block seven or eight feet high on the bottom part of the building. (Trial Tr. at 12.)

 Miller was required to present a prima facie case that its building was entitled to the "adjustment" it was seeking. *See Damon Corp.*, 738 N.E.2d at 1106. The only thing that Miller has done is make the bare assertion that its building was metal so a correction should be applied. That statement without more tells this Court nothing. Bare allegations do not constitute a prima facie case. *Alcoils, Inc. v. State Bd. of Tax Comm'rs*, 727 N.E.2d 795, 801 (Ind.Tax Ct.2000). Therefore, Miller has not established a prima facie case with regard to this issue. Hence, the State Board's duty to refute Miller's evidence is not triggered. *See id.* Thus, the Court AFFIRMS the State Board's final determination of Miller's 133 Petition.

### III. The 131 Petitions

This final section deals with Miller's 131 Petitions. In this section, the Court will address Miller's assertion that it was entitled to a kit building adjustment. The Court will also address Miller's contention that it should receive a downward adjustment to grade if it is not granted the kit building adjustment. In addition, this Court will address Miller's contention that it is entitled to an obsolescence depreciation adjustment.

### A. Kit Building Adjustment

The issue is whether the State Board's final determinations that Miller was not entitled to kit building adjustments are supported by substantial evidence. Miller asserts that kit building adjustments would adjust for the buildings' deviations from the models the State Board used to price them.[3]

The State Board amended its regulations in 1991 to include a fifty percent reduction in the base rate for certain light pre-engineered or kit-type buildings. *Damon*, 738 N.E.2d at 1111; IND. ADMIN. CODE tit. 50, r. 2.1–4–5 (Schedules A1 and A2 )(1992) (codified in present form at *id.*, r. 2.2–11–6 (Schedule A.4)(1996)). Thereafter, the State Board issued Instructional Bulletin 91–8 to provide guidance to assessors in determining which light pre-engineered buildings qualified for the reduction. *Componx, Inc. v. Indiana State Bd. of Tax Comm'rs*, 683 N.E.2d 1372, 1374 (Ind.Tax Ct.1997). Generally, kit buildings are made of light weight and inexpensive materials and are "fabricated at central manufacturing facilities and shipped to the construction site ready for fast and efficient assembly." Instructional Bulletin 91–8 at 1. The reduction in base price is provided because of the economical quality and low cost of materials used in kit buildings. *King Indus.*, 699 N.E.2d at 339.

Instructional Bulletin 91–8 sets forth several examples of common characteristics of low-cost kit buildings. According to Instructional Bulletin 91–8, the "key element in identifying this low cost economical 'kit-type' structure is the type of interior column and roof beam support."

3. Miller does not advise the Court in its briefs as to what models were used to assess its buildings. However, the evidence submitted makes two indirect references to which models might have been used. (Joint Ex. 1, Ex. D–2 at 2.) The final determination on Parcel Two discusses a light manufacturing structure and a light warehouse building. (Joint Ex. 1, Ex. D–2 at 2.) The State Board granted the light warehouse building the kit building adjustment. (Joint Ex. 1, Ex. D–2 at 2.) The final determination on Parcel One does not indicate what model was used to assess the buildings located thereon.

Instructional Bulletin 91–8 at 4. Some examples of characteristics of these column and roof beam systems include: Cold Form Cee Channel supports, tapered columns, H-columns, and steel Pole (Post) columns. *Id.* at 4–5. Instructional Bulletin 91–8 also provides assessors with "other identification clues" that a building is a "kit building" including: metal or steel exterior skin that is normally 26 to 28 gauge, X bracing, steel purlins and girders that are normally 14 to 16 gauge, concrete floors that have minimal tolerances, evenly spaced vertical supports, and normal building widths ranging from 30 feet to 120 feet. *Id.* at 6; *see also King Indus.*, 699 N.E.2d at 339.

Changes that affect the structural integrity of a building could prevent it from receiving the kit building adjustment. *Componx*, 683 N.E.2d at 1375. However, under Instructional Bulletin 91–8, slight variations or modifications in the structural components of a pre-engineered building will not necessarily prevent it from qualifying for the kit building adjustment. Instructional Bulletin 91–8 at 7; *King Indus.*, 699 N.E.2d at 342 n. 11. According to Instructional Bulletin 91–8, certain deviations from the basic kit model can be accounted for by increasing the grade of the improvement being assessed. *Componx, Inc.*, 683 N.E.2d at 1375; Instructional Bulletin 91–8 at 7; *King Indus.*, 699 N.E.2d at 340. However, if the additional features of the kit building result in the building no longer being economical, then it cannot qualify for the kit adjustment. Instructional Bulletin 91–8 at 7.

 The Court must first determine whether Miller has established a prima facie case that it is entitled to a kit building adjustment. Miller does not point out in its briefs for which structures on which parcels it is requesting a kit building adjustment. As such, this Court gleans from the final determinations that Miller must be requesting kit building adjustments for the "light manufacturing structure" on Parcel Two and any and all structures located on Parcel One as those are the buildings that were denied the kit building adjustment. (Joint Ex. 1, Ex. D–2 & D–3.) Miller asserts that the trial testimony of Hearing Officer Boulac and Mark Drew Miller, the taxpayer representative who reviewed Miller's assessment, provides evidence that the building should be given a kit building adjustment. (Pet'r Br. at 10.) At trial, Hearing Officer Boulac testified that her notes revealed that she ascertained from a plate on the wall of the building or from her tour guide that twenty-six gauge galvanized steel was used on the building.[4] (Trial Tr. at 20.) Mark Drew Miller testified at trial that the subject property had rigid framing with "C channels" and tapered columns. (Trial Tr. at 35.) Because the Court finds that twenty-six gauge steel sheeting used on the walls, Cee channels, and tapered columns constitute probative evidence of a kit building, this Court concludes that Miller has established a prima facie case that its buildings are entitled to a kit building adjustment. *See* Instructional Bulletin 91–8 at 6; *See Damon Corp.*, 738 N.E.2d at 1111. Consequently, the burden shifts to the State Board to support its final determination with substantial evidence.

 The State Board stated in its final determination that the light manufacturing structure on Parcel Two had been modified and therefore did not conform to the guidelines for a structure to qualify as a kit building. (Joint Ex. 1, Ex. D-2 at 2.) With regard to Parcel One, the State Board found that the structure did not conform "to the guidelines for a structure

4. Boulac did not identify which building has the 26 gauge steel.

to qualify as a kit building." (Joint Ex. 1, Ex. D 3 at 2.) At trial,[5] Hearing Officer Boulac testified that she did not grant the kit building adjustment because, based upon her inspection, the building was more heavily constructed than a standard kit building. (Trial Tr. at 31–32.) Boulac testified that the concrete floor was heavier, thicker, more fortified, and had a higher tolerance load than the standard concrete in a typical kit building such that it was able to bear the weight of forklifts and other heavy moving equipment that she observed when she inspected the property. (Trial Tr. at 31, 55.) More specifically, she stated that the "building was used in the manufactured-home industry, and there [were] very heavy vehicles and heavy pieces of building moved over" the floor. (Trial Tr. at 31.) In addition, she stated that there were "railroad type tracks" in the subject structure that were used to move buildings in and out as they were being worked on. (Trial Tr. at 55.) She testified that the beams in the building did not appear to be standard, evenly constructed "C beams." (Trial Tr. at 55.) Instead, she stated that the beams were heavier and shaped slightly differently than those in a standard kit building. (Trial Tr. at 55–56.) She also testified that the beams had pulleys hung from them that were used to move equipment around.

(Trial Tr. at 31, 56.) Boulac testified that certain areas of the roof were nearly flat which was an indication that the construction of the roof would allow for a greater load on it than would a traditional kit building that has to be sloped so that things such as snow can slide off as the standard kit building roof could not bear the heavy load. (Trial Tr. at 54–55.) Moreover, she testified that the heavier beams would allow a flatter roof because they were stronger than the beams used to support a standard kit building. (Trial Tr. at 56.)

■■■ The Court finds that Boulac's testimony that the tolerance loads of the concrete floors, beams, and roof were heavier than those used in a standard kit building constitutes substantial evidence to support the State Board's final determination that the buildings in question were not entitled to a kit building adjustment. Although Miller had the opportunity at trial to rebut the State Board's evidence that the buildings did not qualify for a kit building adjustment, it did not do so. Moreover, viewing the evidence presented by Miller in support of its position that it is entitled to the kit building adjustment in light of the evidence presented by the State Board to support its denial of the adjustment, the Court concludes that the State Board did

---

5. The State Board did not document the specific reasons discussed at trial in its final determination. In general, the State Board, "may not support a final determination by referring to reasons that were not previously ruled upon, but that are offered as post hoc rationalizations." *Word of His Grace Fellowship, Inc. v. State Bd. of Tax Comm'rs,* 711 N.E.2d 875, 878 (Ind.Tax Ct.1999). However, if a petitioner does not address the post hoc nature of the State Board's argument in its brief, any complaints along those lines are waived, and the Court will decide the issue on the merits. *W.H. Paige & Co. v. State Bd. of Tax Comm'rs,* 711 N.E.2d 552, 556 n. 4 (Ind. Tax Ct.1999), *review denied.* When the peti-

tioner does not raise the issue, the Court will treat the post hoc rationalizations as if they were part of the State Board's final determinations. *Pedcor Investments 1990–XIII, L.P. v. State Bd. of Tax Comm'rs,* 715 N.E.2d 432, 436 n. 8 (Ind.Tax Ct.1999); *Zakutansky v. State Bd. of Tax Comm'rs,* 696 N.E.2d 494, 495 n. 2 (Ind.Tax Ct.1998); *Loveless Const. Co. v. State Bd. of Tax Comm'rs,* 695 N.E.2d 1045, 1050 n. 8 (Ind. Tax Ct.1998). Because Miller has not raised the issue of the post hoc rationalization by the State Board in its brief, the Court will decide the case on its merits considering the post hoc rationalizations as part of the final determinations.

not act arbitrarily or capriciously in denying the kit building adjustment. *See Freudenberg–NOK General Partnership*, 715 N.E.2d at 1029. Therefore, the Court gives deference to the State Board's final determinations regarding this issue. As such, the Court AFFIRMS the State Board's final determinations with regard to the kit building issue.

### B. Grade

The next issue is whether the State Board supported its final determinations that Miller was not entitled to a reduction in grade to a D–1 with substantial evidence. It appears that Miller asserts that if it does not receive the kit building adjustment, the C–2 grade assigned to the structures should be lowered to a D–1. (Trial Tr. at 59; Joint Ex. 1, Ex. D–2 & D–3; Joint Ex. 2 at 5; Joint Ex. 3 at 3.) It is true that if a building does not qualify for the kit adjustment, an assessor may apply "a low grade and design factor to account for the lower cost of construction." *King Indus.*, 699 N.E.2d at 340–41 (internal quotations omitted). However, when contesting the grade assigned to an improvement, a taxpayer must offer probative evidence concerning the alleged assessment error. *Kemp v. State Bd. of Tax Comm'rs*, 726 N.E.2d 395, 400 (Ind.Tax Ct.2000). "Where the taxpayer fails to provide the State Board with probative evidence supporting his position on the grade issue, the State Board's duty to support its final determination with substantial evidence is not triggered." *Id.* Under Indiana's true tax value system, improvements are assigned various grades based on the quality of materials, design and workmanship. *Id. See also* IND. ADMIN. CODE tit. 50, r. 2.1–4–3(f) (1992) (codified in present form at *id.*, r. 2.2–10–3 (1996)). The grades represent multipliers that are applied to the base replacement cost of an improvement. *Kemp*, 726

N.E.2d at 400. *See also* IND. ADMIN. CODE tit. 50, r. 2.1–4–3(f).

Miller does not point out in its briefs for which structures on which parcels it is requesting a grade adjustment. However, the final determinations reveal that the buildings on both Parcel One and Parcel Two received C–2 grades. (Joint Ex. 1, Ex. D–2 & D–3.) The Court assumes that Miller wants adjustments on the improvements located on both parcels.

In addition, Miller does not identify in its briefs what models were used to assess the buildings in question. In order for a grade adjustment to be evaluated, one must know the model used to assess the building. The Court's review of the evidence uncovered three indications of which models *might* have been used. First, Mark Drew Miller testified that the model that the structure was being priced from had the following features that did not exist in the subject building "[c]omplete concrete block exterior walls; concrete block partitioning; central forced air heating system; [and] the interior finish." (Trial Tr. at 34.) Second, the Assessment Review and Analysis done for each parcel by Mark Drew Miller has a copy of part of schedule A.2 and schedule A.3 from IND.ADMIN.CODE tit. 50, r. 2.1–4–5 (1992). (Joint Ex. 2 at 6 & Joint Ex. 3 at 4.) Third, the final determination on Parcel Two discusses a light manufacturing structure and a light warehouse building. (Joint Ex. 1, Ex. D–2 at 2.) None of these pieces of evidence clearly identifies which models were used and this Court will not make Miller's case for it by trying to figure out which ones were used. *See CGC Enters. v. State Bd. of Tax Comm'rs*, 714 N.E.2d 801, 803 (Ind.Tax Ct.1999).

It appears that the evidence that Miller sets forth to support its assertion that the grade should be lowered is the

same evidence it presented for its kit building argument. That evidence includes Miller's assertion that at least one of the buildings had twenty-six gauge steel walls, Cee channels, and tapered columns. While this could be probative evidence that the grade should be reduced, it is not sufficient to establish a prima facie case because Miller has not identified the models used in the assessments or demonstrated that the C–2 grade does not already account for any lower construction costs due to these features. *See King Indus.*, 699 N.E.2d at 340–41. In addition, the Assessment Review and Analysis for each parcel sets forth contentions regarding grade. The following contention is set forth for Parcel One: "To adjust for the inferior quality of construction materials and workmanship and lack of certain component features, a grade of D-1 should be applied." (Joint Ex. 3 at 3.) The Assessment Review and Analysis for Parcel Two sets forth the following contention: "The subject varies substantially from the base model as described in the assessment manual. To adjust for the inferior construction and lack of certain component features, a grade of D–1 should be applied to the base price and/or a use-type base rate split should be used." (Joint Ex. 2 at 5.) These contentions are conclusory because they do not specifically describe why the improvements better resemble the description of D grade improvements as set forth in IND. ADMIN. CODE tit. 50, r. 2.1.4–3(f). "A taxpayer's conclusory statements do not constitute probative evidence concerning the grading of the subject improvement." *Sterling Management–Orchard Ridge Apartments v. State Bd. of Tax Comm'rs*, 730 N.E.2d 828, 838 (Ind.Tax Ct.2000). Therefore, the contentions in each Assessment Review and Analysis do not constitute probative evidence. Because Miller has not made a prima facie case that the grade of the improvements should be low-

ered to a D–1, the State Board's duty to support its final determinations with substantial evidence is not triggered. *See Kemp*, 726 N.E.2d at 400. Consequently, the Court AFFIRMS the State Board's final determinations that the improvements in question are entitled to a C–2 grade.

### C. Obsolescence

■■■■■ The final issue is whether the State Board supported its final determina-. tions that Miller's buildings were not entitled to obsolescence depreciation adjustments with substantial evidence. "The True Tax Value of a commercial improvement is determined by calculating the reproduction cost of the improvement (as determined by an application of the State Board regulations) and subtracting any physical and obsolescence depreciation." *Loveless Const.*, 695 N.E.2d at 1047. The regulations define obsolescence as a functional and economic loss of value. IND. ADMIN. CODE tit. 50, r. 2.1–5–1 (1992) (codified in present form at *id.*, r. 2.2–10–7(e) (1996)). Functional obsolescence is caused by factors internal to the property and is "evidenced by conditions within the property." *Id.* Economic obsolescence is caused by factors that are external to the property. *Id.* In the commercial context, a loss of value usually represents a decrease in the improvement's income generating ability. *Loveless Const.*, 695 N.E.2d at 1047. *See also Damon Corp.*, 738 N.E.2d at 1108.

In *Clark v. State Board of Tax Commissioners*, this Court concluded that as a prerequisite for this Court to review a taxpayer's claim that it is entitled to an obsolescence adjustment, during its hearing before the State Board the taxpayer must follow a two-step process whereby a taxpayer must first identify causes of obsolescence and then quantify the amount of

obsolescence to be applied. *Clark*, 694 N.E.2d at 1241. However, because this case arose before *Clark*, Miller was not required to quantify its evidence, but simply to identify it. *See id.* Moreover, Miller was required to present probative evidence sufficient to establish a prima facie case regarding its asserted causes of obsolescence. *White Swan Realty v. State Bd. of Tax Comm'rs*, 712 N.E.2d 555, 560 (Ind. Tax Ct.1999), *review denied.*

The Court first looks to whether Miller has presented probative evidence that its buildings suffer from obsolescence. Miller claims that its buildings are entitled to obsolescence depreciation because they have "add-on construction." (Pet'r Br. at 11.) Miller presented testimony by Mark Drew Miller that the buildings have a loss of value due to the fact that they had "add on construction" and if they were built now they would probably be built more efficiently and "under one roof." (Trial Tr. at 38–39, 42.) In addition, the Assessment Review and Analysis for Parcel Two, which was prepared by Mark Drew Miller, included the statement "[o]bsolescence depreciation should be applied to account for the loss in value due to the inefficiencies created by the layout of the entire plant site."[6] (Joint Ex. 2 at 5.) The above evidence is all that Miller offers in support of its proposition.

Here, Miller presents only conclusory statements that its property suffered from obsolescence.[7] Conclusory statements do not constitute probative evidence. *Sterling Management–Orchard Ridge Apartments*, 730 N.E.2d at 839. Miller has not demonstrated how its assertions show a loss in value that would be indicative of obsolescence. *See* IND. ADMIN. CODE tit. 50, r. 2.1–5–1. Miller also did not designate what kind of obsolescence was allegedly demonstrated by its evidence. Miller's presentation of evidence without showing how that evidence demonstrates that its property has suffered from obsolescence is not probative evidence. This Court will not make Miller's case for it. *See CGC Enterprises*, 714 N.E.2d at 803. Because Miller has not established a prima facie case identifying obsolescence, the burden has not shifted to the State Board to support its final determination with substantial evidence. Therefore, the Court AFFIRMS the final determinations of the State Board that Miller's buildings are not entitled to obsolescence depreciation.

## CONCLUSION

For the foregoing reasons, the Court hereby AFFIRMS the State Board's final determinations on both Miller's 133 Petition and 131 Petitions that it is not entitled

---

6. The Assessment Review and Analysis for Parcel One did not mention obsolescence depreciation. (Joint Ex. 3.) When asked at trial whether any evidence was presented regarding alleged obsolescence of Parcel One during the 131 hearing, Mark Drew Miller replied that he did not present anything other than what was presented for Parcel Two because the parcels were "contiguous parcels, and very similarly constructed buildings, and they are all working within the same industrial complex or production." (Trial Tr. at 43.) Nonetheless, the State Board's final determination on Parcel One concluded that it was not entitled to obsolescence depreciation. (Joint Ex. 1, Ex. D–3.)

7. The Court notes that there are four copies of photographs included in the Review and Analysis of Parcel Two. However, Miller never directs the Court's attention to these photographs or provides the Court with any explanation of their purpose with regard to any of its arguments concerning obsolescence, grade, kit building adjustment or otherwise. (Joint Ex. 2 at 3–4.) This Court has rejected past attempts by taxpayers to put forth evidence such as photographs without explanations and does so again in this case. *See Heart City Chrysler v. State Bd. of Tax Comm'rs*, 714 N.E.2d 329, 333 (Ind.Tax Ct.1999).

a kit building adjustment, an adjustment to grade, or to obsolescence depreciation.

## *ORDER*

Respondent, State Board of Tax Commissioners, by counsel, files its Motion for Publication of Memorandum Decision.

No response or objection has been filed by the Petitioner.

The court, having considered same and being duly advised in the premises, now finds said motion should be GRANTED and that this Court's opinion in this appeal should now be ordered published.

IT IS THEREFORE ORDERED as follows:

1. Respondent's "Motion for Publication of Memorandum Decision" is granted and this Court's opinion heretofore handed down in this cause on March 26, 2001, marked "Not for Publication" in now ordered published.