**DEER CREEK DEVELOPERS, LTD., Petitioner,**

v.

**DEPARTMENT OF LOCAL GOVERNMENT FINANCE,[1] Respondent.**

No. 49T10–9702–TA–127.

Tax Court of Indiana.

May 30, 2002.

---

1. The State Board of Tax Commissioners (State Board) was originally the Respondent in this appeal. However, the Legislature abolished the State Board as of December 31, 2001. Pub.L. No. 198–2001, § 119(b)(2). Effective January 1, 2002, the Legislature created the Department of Local Government Finance (DLGF), and the Indiana Board of Tax Review (Indiana Board). IND.CODE §§ 6–1.1–30–1.1; 6–1.5–1–3 (West Supp.2001); Pub.L. No. 198–2001, §§ 66, 95. Pursuant to Indiana Code § 6–1.5–5–8, the DLGF is sub-stituted for the State Board in appeals from final determinations of the State Board that were issued before January 1, 2002. IND.CODE § 6–1.5–5–8 (West Supp.2001) (eff.2002); Pub.L. No. 198–2001, § 95. Nevertheless, the law in effect prior to January 1, 2002 applies to these appeals. I.C. § 6–1.5–5–8. *See also* Pub.L. No. 198–2001, § 117. Although the DLGF has been substituted as the Respondent, this Court will still reference the State Board throughout this opinion.

Timothy J. Vrana, Sharpnack, Bigley, David & Rumple, Columbus, IN, Attorney for Petitioner.

Steve Carter, Attorney General of Indiana, Vincent S. Mirkov, Deputy Attorney General, Indianapolis, IN, Attorneys for the Respondent.

FISHER, J.

Deer Creek Developers, Ltd. (Deer Creek) appeals the final determination of the State Board of Tax Commissioners (State Board) assessing Deer Creek's neighborhood shopping center (Center) for the 1994 tax year. Deer Creek raises the following issues, which the Court restates as:

I. Whether the Center's assessment should be reduced for economic obsolescence;

II. Whether the Center's assessment should be reduced for its partitioning;

III. Whether the Center's assessment should be reduced because of the type of lights in the Center;

IV. Whether the Center should have received a grade adjustment;

V. Whether the Center's assessment should be reduced for its wall height;

VI. Whether the assessment of the Center's supermarket should be reduced because its storage area is unfinished and air conditioning is absent from it; and

VII. Whether the cost of wallpaper should be deducted from the assessment of the Center's 36,286 square-foot shopping area.[2]

For the reasons stated below, the Court AFFIRMS the State Board's final determination of Issues I–V, but REVERSES

---

2. Deer Creek also argues that its assessment is "plainly excessive" because the value of its property as determined under the State Board's rules (i.e., True Tax Value, IND.CODE § 6–1.1–31–6(c) (1998)), exceeds its fair market value by more than 80%. (Pet'r Br. at 1.) Deer Creek's argument is general and unsupported by specific argument or authority, thus, its claim presents no issue for the Court to decide. *See Bulkmatic Transport Co. v. Dep't of State Revenue,* 691 N.E.2d 1371, 1375 (Ind. Tax Ct.1998).

and REMANDS its final determination of Issues VI and VII for further consideration.

## FACTS AND PROCEDURAL HISTORY

On November 23, 1993, Deer Creek purchased the Center, which is in Harrison County, Indiana. The Center included a 30,000 square-foot, finished supermarket with air-conditioning to which Deer Creek subsequently added a 10,440 square-foot unfinished storage area without air-conditioning. The remaining 36,286 square feet of the Center comprised the Center's retail shopping area, bringing the total area of the Center to 76,726 square feet. The Center contained approximately 6,000 square feet of partitioning. Furthermore, the exterior walls of the Center were not of uniform height but on average were eighteen feet high. Also, approximately 43% of the Center was vacant on March 1, 1994.

The Center was assessed on March 1, 1994, at $1,645,800. In particular, the supermarket was assessed (using the General Commercial Mercantile (GCM) Supermarket model) as a single, finished open unit having air conditioning. The rest of the Center was assessed using the GCM Neighborhood Shopping Center model. The entire Center was given a C grade.

Deer Creek filed a Form 130 Petition for Review of Assessment with the Harrison County Board of Review (BOR). The BOR, however, increased Deer Creek's assessment to $1,810,900. Deer Creek then filed a Form 131 Petition for Review of Assessment with the State Board, arguing that Center's assessment should have been $1,132,900. The State Board lowered the Center's assessment to $1,685,400. In particular, the State Board altered the Center's assessment to correctly reflect the Center's wall type and its exterior wall height. The State Board also assessed three mezzanines that had not previously been assessed, and it adjusted the assessment of the Center's paving. The State Board also corrected the Center's entire floor area measurement, reassessed various building components and the Center's sprinkler system, and re-characterized the Center as a "mixed use" improvement.

On January 30, 1997, Deer Creek initiated an original tax appeal with this Court. The Court held a trial on October 31, 1997. Additional facts will be provided when necessary.

## ANALYSIS AND OPINION

### Standard of Review

■ This Court gives great deference to the final determinations of the State Board when it acts within the scope of its authority. *Wetzel Enters., Inc. v. State Bd. of Tax Comm'rs*, 694 N.E.2d 1259, 1261 (Ind. Tax Ct.1998). This Court will reverse a final determination of the State Board only when its findings are unsupported by substantial evidence, arbitrary, capricious, constitute an abuse of discretion, or exceed statutory authority. *Id.*

■ Moreover, a taxpayer who appeals to this Court from a State Board final determination bears the burden of showing that the final determination was invalid. *Clark v. State Bd. of Tax Comm'rs*, 694 N.E.2d 1230, 1233 (Ind. Tax Ct.1998). The taxpayer must present a prima facie case by submitting probative evidence, i.e., evidence sufficient to establish a given fact if not contradicted. *Thousand Trails, Inc. v. State Bd. of Tax Comm'rs*, 757 N.E.2d 1072, 1075 (Ind. Tax Ct.2001). Once the taxpayer presents a prima facie case, the burden shifts to the State Board to rebut the taxpayer's evidence and support its findings with sub-

stantial evidence. *Clark,* 694 N.E.2d at 1233.

## Discussion

### I. Economic Obsolescence

■ The first issue is whether the Center's assessment should be reduced for economic obsolescence. Deer Creek argues that it is entitled to a 50% economic obsolescence reduction because 43% of the Center was continuously vacant for one year prior to and including March 1, 1994. The State Board responds that the evidence fails to support Deer Creek's contention. .

■ Economic obsolescence is a loss of property value because of external factors. IND. ADMIN. CODE tit. 50, rr. 2.1–5–1; 2.1–6–1 (1992); *Louis D. Realty Corp. v. State Bd. of Tax Comm'rs,* 743 N.E.2d 379, 385 (Ind. Tax Ct.2001). In cases where the State Board has held a hearing on the taxpayer's claim prior to this Court's opinion in *Clark* (such as the instant case), the taxpayer must make a prima facie case of economic obsolescence by identifying the cause of the obsolescence. *Louis D. Realty,* 743 N.E.2d at 385–86.[3]

The burden, therefore, was on Deer Creek to present probative evidence showing the cause of the Center's obsolescence. *See Thousand Trails,* 757 N.E.2d at 1075; *Louis D. Realty,* 743 N.E.2d at 386; *Clark,* 694 N.E.2d at 1238. Deer Creek's evidence consisted of the testimony of its designated tax representative, Milo E. Smith of Tax Consultants, Inc. Smith testified that he sent an associate to the Center

on April 4, 1994, to verify that the Center was vacant. Moreover, Smith testified that the owner of the Center told him that 43% of the Center had been vacant for one year.

Vacancy by itself does not prove any obsolescence. *Louis D. Realty,* 743 N.E.2d at 387. Vacancy is merely a sign of possible obsolescence; a taxpayer seeking an obsolescence reduction because of building vacancy must still present probative evidence showing the reason *why* its building is vacant. *Id.; Damon Corp. v. State Bd. of Tax Comm'rs,* 738 N.E.2d 1102, 1109 (Ind. Tax Ct.2000). Deer Creek did not submit any evidence showing why the Center was vacant. Its mere claim that the Center was vacant does not, by itself, constitute probative evidence of economic obsolescence. Because Deer Creek did not present any probative evidence, it did not make a prima facie case with regard to economic obsolescence. As a result, the Court AFFIRMS the State Board's final determination of Issue I.

### II. Partitioning

■ The second issue is whether the Center's assessment should be reduced because it has less partitioning than is presumed by the GCM Neighborhood Shopping Center model. Deer Creek contends that it has been excessively assessed for partitioning because the GCM Neighborhood Shopping Center model presumes more partitioning than actually is in the Center. The State Board responds that its assessment of the Center's partitioning was appropriate because the base price[4]

---

**3.** In cases where the State Board has held its hearing after this Court's opinion in *Clark,* the taxpayer must (1) identify the cause of obsolescence and (2) quantify the obsolescence to make a prima facie case. *Louis D. Realty,* 743 N.E.2d at 385–86.

**4.** The State Board's rules use the terms "price", "cost", and "rate" interchangeably.

*Cf.* IND. ADMIN. CODE tit. 50, rr. 2.1–4–3(a) (1992) (referring alternatively to the "base price" and "base rate" of the models); 2.1–4–3(c) (alternatively referring to a building component's "price" and "cost" as an element of an improvement's "base rate"); 2.1–6–1 (de-

for the GCM Neighborhood Shopping Center model includes the cost for normal partitioning. The State Board claims that the Center's partitioning is the sort of "normal" partitioning presumed by the GCM Neighborhood Shopping Center model.

 Improvements in Indiana are assessed using generally descriptive models. *See* IND. ADMIN. CODE tit. 50, r. 2.1–4–7 (1992). All the commercial models include "normal partitioning," which for the GCM Neighborhood Shopping Center model is defined as "scant partitioning (typical of discount retail finished open areas)." IND. ADMIN. CODE tit. 50, rr. 2.1–4–2(i) (1992) (providing that the partitioning for finished open areas is "scant"); 2.1–4–3(c) (providing that all the commercial models include "normal" partitioning); 2.1–4–7(a) (providing that the partitioning for the GCM Neighborhood Shopping Center model is "typical of discount retail finished open areas"). Thus, one way that Deer Creek could have presented a prima facie case would have been to submit probative evidence showing that the Center's partitioning is not typical of discount retail finished open areas.[5]

Deer Creek submitted evidence showing the Center has approximately one square foot of partitioning for each twelve-and-a-half square feet of floor area. It then claimed that the GCM Neighborhood Shopping Center model presumes one square foot of partitioning for each one square foot of floor area.[6] Deer Creek, however, cited no legal authority to support the proposition that the GCM Neighborhood Shopping Center model presumes a 1:1 ratio of partitioning to floor area; Deer Creek's conclusory assumption on this matter does not persuade the Court.[7] *See Bulkmatic Transport Co. v. Dep't of State Revenue*, 691 N.E.2d 1371, 1375 (Ind. Tax Ct.1998) (rejecting a taxpayer's argument where it was unsupported by any authority). Because Deer Creek did not support its argument about the partitioning-to-floor-space ratio with any authority, it did not satisfy its burden. Therefore, the Court AFFIRMS the State Board's final determination of Issue II.

### III. Lights

 The third issue is whether the Center's assessment should be reduced because of the type of lights in the Center. Deer Creek argues that the Center's base

---

fining "base price" as the "unit rate"). For the sake of clarity, the Court will use the term "base price" when referring to the Center's assessment, even where the State Board has otherwise used the term "cost" or "rate".

5. The State Board argues that real-world improvements are probative evidence of "typical" building components and average costs. The Court agrees with the State Board inasmuch as property in Indiana is assessed by comparing real-world improvements to the models. *See, e.g., Inland Steel Co. v. State Bd. of Tax Comm'rs*, 739 N.E.2d 201, 225 n. 28 (Ind. Tax Ct.2000) (noting that the models must be selected based on the closest resemblance between an improvement and a model). Thus, when the issue is whether a building component is typical or of average cost pursuant to the models, one way a taxpayer

may present a prima facie case is by submitting probative evidence of real-world improvements.

6. Accordingly, Deer Creek concludes that $164,961 of the Center's assessment—roughly 10%—is for partitioning alone. As a result, Deer Creek requests that $120,773 be deducted from the Center's base price.

7. The State Board's rules provide that normal partitioning for the GCM Neighborhood Shopping Center Model is "scant". IND. ADMIN. CODE tit. 50, rr. 2.1–4–2(i) (1998); 2.1–4–3(c); 2.1–4–7(a). During oral arguments, the Court repeatedly asked counsel for Deer Creek to cite any authority that quantifies the ratio of partitioning for the GCM models. Counsel was unable to do so. Moreover, a 1:1 partitioning-to-floor-space ratio in a

price should be reduced because the Center's lights are more typical of the less expensive lights found in discount stores rather than the more expensive lights found in retail shopping centers. The State Board contends that Deer Creek did not offer probative evidence showing that the Center's lights were excessively assessed.

The GCM Neighborhood Shopping Center model presumes "[a]verage cost fluorescent fixtures" at a cost of $2.55 per square foot. IND. ADMIN. CODE tit. 50, rr. 2.1–4–5 (1992) (Schedule C); 2.1–4–7(a). Deer Creek claims that its lights should have been assessed from the GCM Discount store model, which presumes lights that are "typical of discount retail finished open areas" at a cost of $2.00 per square foot. *See* 50 IAC 2.1–4–5 (Schedule C); 2.1–4–7(a). Deer Creek's evidence was Smith's testimony. Smith described the Center's lighting scheme as twin fluorescent bulbs that hung from the ceiling without a decorative box, concluding that the Center's lights were "the least expensive fluorescent lights that [he had] ever seen in any commercial building" and were "more typical of what you would find in a discount store". (Trial Tr. at 25–26.) Smith's conclusory statements, however, do not constitute probative evidence.[8] *See Miller Structures, Inc. v. State Bd. of Tax Comm'rs*, 748 N.E.2d 943, 954 (Ind. Tax Ct.2001). Because Deer Creek presented no probative evidence, it did not make a prima facie case. Consequently, the Court AFFIRMS the State Board's final determination of Issue III.

## IV. Grade

The fourth issue is whether the Center should have received a grade adjustment. Deer Creek argues that numerous features rendered the quality of the Center's material, design, and workmanship inferior to that of the average Wal-Mart, and therefore the Center should have received a D grade instead of a C grade. The State Board contends that the Center was appropriately given a C grade based on its average building materials and workmanship.

In general, every improvement's materials, design, and workmanship are collectively assigned a grade from A to E, which represents a numeric multiplier that raises or lowers an improvement's base price.[9] *Id.* at 952; *Whitley Prods., Inc. v. State Bd. of Tax Comm'rs*, 704 N.E.2d 1113, 1116 (Ind. Tax Ct.1998), *review denied.* The "C" grade is given to "[m]oderately attractive buildings constructed with average quality materials and workmanship throughout[.]" IND. ADMIN. CODE tit. 50, r. 2.1–4–3(f) (1992). The C grade is also the default grade for all commercial models. *See id.* (providing that "[t]he prices contained in the schedules reflect the 'C' grade standard of quality and design"). The "D" grade is given to "[b]uildings constructed with economy quality materials and fair workmanship throughout." *Id.* The burden was on Deer Creek to submit probative evidence showing that the State Board either improperly gave the Center a C grade or improperly denied

---

neighborhood shopping center hardly seems "scant".

**8.** Smith's vague testimony is matched only by the vague description of lighting in the GCM Neighborhood Shopping Center and Discount Store models. Nevertheless, the vague wording of the model descriptions did not relieve Deer Creek of its burden to submit probative evidence establishing a prima facie case.

**9.** The "A" grade is a base price multiplier of 160%; the "E" grade is a base price multiplier of 40%. IND. ADMIN. CODE tit. 50, r. 2.1–4–3(f) (1992). Grade adjustments should be avoided if possible because they require an assessor's subjective judgment. *Fleet Supply, Inc. v. State Bd. of Tax Comm'rs*, 747 N.E.2d 645, 651 n. 4 (Ind. Tax Ct.2001).

the Center a D grade.[10] *See Miller Structures*, 748 N.E.2d at 952–53; *Quality Farm and Fleet, Inc. v. State Bd. of Tax Comm'rs*, 747 N.E.2d 88, 94 (Ind. Tax Ct.2001).

Here, Deer Creek's evidence consisted of nothing more than Smith's allegation that the Center's materials and workmanship were inferior to the materials and workmanship of a Wal–Mart. Smith testified that "the typical shopping center, which would be a C grade in most communities throughout the state, would be a Wal–Mart center; that's kind of your typical or average." (Trial Tr. at 29.) Smith went on to allege various deficiencies in the Center's construction then concluded that "the workmanship and the quality of materials used in [the Center] were not typical of a Wal–Mart[.]"[11] (Trial Tr. at 29–30.) Smith's testimony was conclusory because it (1) did not establish that a Wal–Mart is the "typical" shopping center in Indiana, (2) did not establish what the materials, design, and workmanship of a Wal–Mart are, and (3) assumed without showing that a Wal–Mart typically receives a C grade. Smith's testimony, therefore, did not constitute probative evidence. *See Miller Structures* 748 N.E.2d at 954.

Deer Creek was responsible for comparing the GCM models with the Center's features and making a "logical, well-reasoned argument supporting its position based upon the evidence submitted." *Fleet Supply*, 747 N.E.2d at 651–52. "A taxpayer (or counsel or witness for the taxpayer) cannot simply point to alleged deficiencies in a building and expect to make a prima facie case as to grade or any other issue."[12] *Id.* at 652. *See also Miller Structures*, 748 N.E.2d at 953; *Quality Farm*, 747 N.E.2d at 94. Because Deer Creek presented neither probative evidence nor a sound argument comparing its improvement to the GCM model, it did not satisfy its burden. As a result, the Court AFFIRMS the State Board's final determination of Issue IV.

### V. Wall Height

The fifth issue is whether the Center's assessment should be reduced for its wall height. Deer Creek maintains that the Center's walls were excessively assessed because the State Board measured the exterior walls from base to top at eighteen feet on average. Specifically, Deer Creek contends that the Center's *interior* walls should have been measured

10. For example, Deer Creek could have identified or described specific instances where the State Board has given a similarly structured building the grade Deer Creek seeks. *See Fleet Supply*, 747 N.E.2d at 651.

11. Specifically, Smith testified that the Center had "inexpensive lights"; that the floor tiles "weren't in a straight line"; that the grids in the drop ceiling were not straight and were "drooping" or "bent"; that tiles were falling "and all scruffed [sic] up and needed to be replaced in almost every building"; that electrical wires were hanging; and that the walls were "panelized [sic], so you could go up to them and see the cracks." (Trial Tr. at 29–31.)

12. Deer Creek also raises the issue of whether the Center's condition was less than "fair".

An improvement's condition "is an element of depreciation which measures the remaining usefulness of a structure based on its age." *White Swan Realty v. State Bd. of Tax Comm'rs*, 712 N.E.2d 555, 560 (Ind. Tax Ct.1999). A taxpayer that raises the issue of condition must submit probative evidence concerning its improvement's condition. *Id.* Deer Creek's evidence regarding the Center's condition amounted to Smith's testimony that he had "thrown" his analysis of the Center's condition into his analysis of the Center's grade. (Trial Tr. at 32.) Smith's testimony concerning the Center's grade is not probative evidence; therefore, his testimony concerning condition is not probative evidence either. *See White Swan*, 712 N.E.2d at 560 (holding that the Court will not reverse the State Board's final determination of condition where the taxpayer submits no probative evidence).

on average from the floor to the drop ceiling, which would deduct approximately two feet from the Center's wall height measurement. The State Board responds that its rules for measuring mixed wall heights support its wall height measurement in this instance.

The parties agree that the wall height measurement should be averaged. (Trial Tr. at 35–36, 64–65.) The only dispute is whether the interior or exterior wall height should be averaged. The State Board's rules indicate that when an improvement with two or more sections has "varying exterior wall heights," then an assessor should "determine the adjusted wall height for the building" and then uses that figure when calculating an improvement's base price. *See* IND. ADMIN. CODE tit. 50, r. 2.1–4–1 (1992) (providing that an assessor should compute the perimeter-to-area ratio for the entire improvement then determine the adjusted wall height). The record shows that the State Board determined the Center's adjusted wall height for both sections by averaging the Center's exterior wall height; Deer Creek cited no authority indicating that another method would have been more appropriate. Because Deer Creek cited no authority to indicate that the Center's wall height was not properly measured according to the State Board's rules, it did not carry its burden. *See Bulkmatic Transport,* 691 N.E.2d at 1375. Accordingly, the Court AFFIRMS the State Board's final determination of Issue V.

## VI. Supermarket Finish Type and Air Conditioning

The sixth issue is whether the State Board arbitrarily assessed the supermarket's 10,440 square-foot storage area as a finished, air-conditioned area. Deer Creek argues that the supermarket's storage area is a distinct, unfinished space without air conditioning. Accordingly, Deer Creek argues that (1) the storage area should be assessed using the "unfinished" finish type rather than the finished open finish type and (2) the cost for air conditioning should be subtracted from the base price for the storage area. The State Board responds that it appropriately assessed the supermarket's storage area (along with its retail area) as "finished open" and for air conditioning because its rules require component costs to apply to 100% of an improvement's area.

"Finish type" is a component of a model's base price and "denot[es] the extent to which interior finish is included in the base [price]" of a model. IND. ADMIN. CODE tit. 50, r. 2.1–4–3(a) (1992). Of the various finish types, two at are issue in the instant case: "finished open" and "unfinished". The State Board's rules define "unfinished" as "unfinished walls, ceiling, and floors"; they define "finished open" as "finished open space, indicating finished walls, ceiling, and flooring, with scant partitioning, such as that typical of retail areas." *Id.* An assessor should locate the finish type that best matches the area of the improvement being assessed and use that finish type in determining the improvement's base price. *See id.* (providing finish type classifications to facilitate identification of finish type so that an improvement's base price can be adjusted).

The State Board's rules also provide that component costs such as finish type and air conditioning normally should be applied "to 100 percent of *the area* unless otherwise stated." 50 IAC 2.1–4–3(c) (emphasis added). The State Board argues that pursuant to rule 3(c), it correctly extended its assessment of the supermarket's retail area to the adjoining storage area, thus assessing 100% of the improvement as "finished open" and for air conditioning. However, rule 3(c) plainly refers to a single area, not to adjoining areas. Further-

more, rule 3(c) does not provide that an area is coextensive with the surrounding improvement.[13] Thus, rule 3(c) implicitly provides for the use of more than one finish type when an improvement (1) has adjoining areas. and (2) the finish differs between the areas—as is this case here. *Cf.* IND. ADMIN. CODE tit. 50, r. 2.1–4–3(h) (1992) (providing that '[t]he schedules can be effectively applied to . . . a portion of the building[,] such as a floor or section'). Likewise, the State Board's rules do not provide that an area's component cost for air conditioning applies to an adjoining area without air conditioning.[14] *See* 50 IAC 2.1–4–3(c). Accordingly, the Court rejects the State Board's argument that "the area" under Indiana Administrative Code title 50 rule 2.1–4–3(c) includes the adjoining areas.

The evidence shows, and the parties do not dispute, that the supermarket is divided into two distinct areas with different uses: a retail area and a storage area. Furthermore, the parties do not dispute that the storage area is unfinished or that the adjoining retail area qualifies as "finished open." Because these adjoining areas are distinct areas with different finish types, the State Board should have assessed each area's finish type separately. Specifically, the State Board should have assessed the storage area as "unfinished", not as finished "open". *See* 50 IAC 2.1–4–3(a); 2.1–4–3(c).

Likewise, the evidence shows, and the parties do not dispute, that air conditioning is absent from the storage area although the adjoining retail area has air conditioning. Again, because these are two distinct areas, the State Board should have assessed the component costs for each area separately. Thus, the State Board should not have assessed the supermarket's storage area for air conditioning, even though the adjoining retail area was air conditioned. *See* 50 IAC 2.1–4–3(a); 2.1–4–3(c).

In short, Deer Creek's supermarket storage area was a distinct, unfinished area without air conditioning. The State Board's assessment of this area to the contrary was arbitrary and capricious. *See* 50 IAC 2.1–4–3(a); 2.1–4–3(c). Consequently, the Court REVERSES the State Board's final determination of this issue and REMANDS it to the Indiana Board with instructions to assess the supermarket storage area as "unfinished" and to subtract the cost for air conditioning from the storage area's base price.[15]

## VII. Wallpaper

The final issue is whether the State Board supported with substantial evidence its final determination not to deduct the cost of wallpaper from the Center's assessment. Deer Creek contends that the State Board should deduct the cost of wallpaper from the Center's assessment because the GCM Neighborhood Shopping Center model presumes standard grade wallpaper, whereas no wall in the Center had wallpaper when it was assessed. The State Board argues that the Center's as-

---

**13.** If the State Board intended that component costs apply to 100% of the improvement rather than 100% of the area being assessed, it could have stated so in the rules.

**14.** On the other hand, the State Board's rules do provide a deduction for air conditioning if air conditioning applies to some but not all of the area in question. IND. ADMIN. CODE tit. 50, r. 2.1–4–2(i) (1992).

**15.** Deer Creek also argued that $2,000 should be added to the base price of the supermarket storage area to account for "two cheap hanging heaters in that area." (Pet'r Br. at 5.) Accordingly, the Court also remands the issue of assessing the cost of the storage area's heaters to the Indiana Board for further consideration.

sessment should not receive a deduction for wallpaper because its absence of wallpaper is not a significant variation from the GCM Neighborhood Shopping Center model.

 An improvement may deviate from the model used to assess it. The preferred method to account for a deviation is to use the State Board's schedules, which show the costs of various model components and features. *Inland Steel Co. v. State Bd. of Tax Comm'rs*, 739 N.E.2d 201, 227 (Ind. Tax Ct.2000). Deer Creek correctly notes that the GCM Neighborhood Shopping Center model presumes walls with "standard grade wallpaper" at a cost of $0.25 per square foot of wall surface. *See* 50 IAC 2.1–4–5 (Schedule C Unit Cost Adjustments Table); 2.1–4–7(a). Moreover, the State Board does not dispute that the walls in the Center had no wallpaper as of the March 1, 1994 assessment date.

Rather, the State Board argues that "[b]ecause the base replacement cost tables for the various models include interior finish and other features, it is necessary to make cost adjustments only when significant variations occur." (Resp't Post Trial Br. at 10 (quoting 50 IAC 2.1–4–3(c)).) The Court disagrees with the State Board's implication that the Center's absence of wallpaper is not a significant variation from the GCM model. The models provide minimal physical descriptions. *See* 50 IAC 2.1–4–7. Thus, when an objective feature specifically described in a model is absent from an improvement, the

variation is significant. Accordingly, the Court finds that Deer Creek carried its burden by showing that the Center's absence of wallpaper significantly varies from the GCM Neighborhood Shopping Center model at a cost of $0.25 per square foot of wall area. As a result, the State Board's duty to support its findings with substantial evidence was triggered. *See Clark*, 694 N.E.2d at 1233.

The State Board tried to rebut Deer Creek's argument by claiming in effect that it need not adjust the Center's assessment because the Center, even without wallpaper, was still "typical" of neighborhood shopping centers. (Resp't Post Trial Br. at 11.) The State Board, however, offered no substantial evidence to support its finding. Because the State Board did not support its finding with substantial evidence, this Court REVERSES the State Board's final determination of this issue and REMANDS it to the Indiana Board with instructions to deduct $0.25 per square foot of wall area from the base price of Deer Creek's assessment for that portion of the Center assessed using the GCM Neighborhood Shopping Center model.[16]

## CONCLUSION

For the foregoing reasons, the Court AFFIRMS the State Board's final determination of Issues I–V. The Court REVERSES the State Board's final determination of Issues VI and VII and REMANDS these issues to the Indiana Board.[17] The Court ORDERS the

16. The State Board assessed 36,286 square feet of the Center using the GCM Neighborhood Shopping Center model and assessed the rest using the GCM Supermarket model. Deer Creek's deduction for wallpaper should be based only on the 36,286 square feet of the Center assessed using the GCM Neighborhood Shopping Center model because the

GCM Supermarket model does not presume any wallpaper. *See* 50 IAC 2.1–4–7(a).

17. All cases that would have previously been remanded to the State Board are now remanded to the Indiana Board. IND.CODE § 6–1.1–15–8. Final determinations made by the Indiana Board are subject to review by this

Indiana Board to deduct $0.25 per square foot of wall area from the base price of Deer Creek's assessment for that portion of the Center assessed using the GCM Neighborhood Shopping Center model, to assess the supermarket storage area as "unfinished," and to subtract the cost for air conditioning from the base price of the supermarket's storage area.

Court pursuant to Indiana Code § 6–1.1–15.

IND.CODE §§ 6–1.5–5–7; 33–3–5–2.