**WHITLEY PRODUCTS, INC., Petitioner,**

v.

**STATE BOARD OF TAX COMMISSIONERS,**
**Respondent.**

No. 49T10–9701–TA–00048.

Tax Court of Indiana.

Dec. 21, 1998.

Curtis J. Dickinson, David L. Pippen, Dickinson & Abel, Indianapolis, for Petitioner.

Jeffrey A. Modisett, Attorney General, Vincent S. Mirkov, Deputy Attorney General, Indianapolis, for Respondent.

FISHER, J.

Whitley Products, Inc. (Whitley Products) appeals a final assessment determination of the State Board of Tax Commissioners (State Board) fixing the assessed value of property Whitley Products owns as of March 1, 1992. Whitley Products raises three issues for this Court's determination in this original tax appeal:

1) Did the State Board err in grading the subject improvement?

2) Did the State Board err in denying the subject improvement a kit adjustment?

3) Did the State Board err in denying functional and economic obsolescence to the subject improvement?

**FACTS AND PROCEDURAL HISTORY**

Whitley Products owns real property in Marshall County, Indiana. This property consists of land and an improvement. The improvement is comprised of three sections, A, B, and C, which were assessed separately.

In 1992, Whitley Products filed a Form 130 Petition for Review of Assessment [1] with the Marshall County Board of Review (BOR) alleging an error in the base rate and that an improper amount of physical and obsolescence depreciation was applied to the subject improvement. The BOR denied the petition and increased the assessment because it discovered a truck well that had not been assessed. *See* IND.CODE ANN. § 6-1.1-15-2.1 (West 1989) (amended 1993 & 1997).

On September 15, 1992, Whitley Products filed a Form 131 Petition for Review of Assessment with the State Board.[2] On December 18, 1995, the State Board held a hearing on Whitley Products' petition, and on November 22, 1996, the State Board issued its final determination. On January 3, 1997, Whitley Products filed the instant original tax appeal, and on May 29, 1998, the parties tried this cause before the Court. Additional facts will be supplied as necessary.

## ANALYSIS AND OPINION

### Standard of Review

■ The State Board is afforded great deference when it acts within the scope of its authority. *See King Indus. Corp. v. State Bd. of Tax Comm'rs*, 699 N.E.2d 338, 339 (Ind. Tax Ct.1998). Accordingly, the Court reverses final determinations of the State Board only when they are unsupported by substantial evidence, are arbitrary or capricious, constitute an abuse of discretion, or exceed statutory authority. *See id.*

### Discussion

#### I. Grade

The grading of improvements is an important part of the True Tax Value system. Under that system, assessors use cost schedules to determine the base reproduction cost of a particular improvement. *See Garcia v. State Bd. of Tax Comm'rs*, 694 N.E.2d 794, 797 (Ind. Tax Ct.1998); *Town of St. John v. State Bd. of Tax Comm'rs*, 690 N.E.2d 370, 373-74 (Ind. Tax Ct.1997), *aff'd in part, rev'd in part*, 702 N.E.2d 1034 (1998). Improvements are then assigned various grades

based on their materials, design, and workmanship. *See* IND. ADMIN. CODE tit. 50, r. 2.1-4-3 (1992) (codified in present form at *id.* r. 2.2-10-3 (1996)) (Grade is "used to adjust the total base reproduction cost determined by [using the cost schedules] to account for variations in the quality of materials, workmanship, and design."); *Barth, Inc. v. State Bd. of Tax Comm'rs*, 699 N.E.2d 800, 804 n. 12 (Ind. Tax Ct.1998); *Zakutansky v. State Bd. of Tax Comm'rs*, 696 N.E.2d 494, 495 n. 1 (Ind. Tax Ct.1998); *see also Clark v. State Bd. of Tax Comm'rs*, 694 N.E.2d 1230, 1236 & n. 1 (Ind. Tax Ct.1998). The grades represent multipliers that are applied to the base reproduction cost of an improvement as calculated by using the cost schedules provided in State Board regulations. *See Zakutansky*, 696 N.E.2d at 496 n. 5; *Garcia*, 694 N.E.2d at 796-97.

Whitley Products challenges the grading of the subject improvement. As noted above, the three sections were graded separately. However, Whitley Products does not make specific arguments with respect to each section. Instead, Whitley Products makes a generalized contention that the State Board failed to take into consideration the quality of the materials and workmanship of the subject improvement when evaluating the grading of the subject improvement. Whitley Products also contends that the State Board's regulations concerning grade fail to provide any ascertainable standards by which this Court and taxpayers may evaluate a determination of grade under the regulations.

With respect to the grading of the subject improvement, the State Board concluded in its final determination:

> This building does not qualify as a steel kit building.... However, the overall quality of the materials and workmanship does resemble a steel kit building. To account for the lower cost of construction pursuant to 50 IAC 2.1-4-3(f), the grade of sections B and C has been reduced to D.

(State Bd. Final Determination at 2). The State Board did not alter the C grade already assigned to section A of the subject improvement.

---

1. *See* IND.CODE ANN. § 6-1.1-15-1 (West 1989) (amended 1993 & 1997).

2. *See* IND.CODE ANN. § 6-1.1-15-3 (West 1989) (amended 1993 & 1997).

■ The above-quoted language would seem to undermine Whitley Products' contention that the State Board failed to take the quality of the materials and workmanship into account when arriving at the grade of the subject improvement.[3] However, the evidence offered at trial paints a different picture of how the State Board arrived at the D grade.

At trial, the State Board hearing officer, Ms. Ellen Yuhan, testified that she arrived at the D grade by calculating the deviations of the subject improvement from the model used to develop the cost schedule. Under the regulations, a C grade is given to a

> [m]oderately attractive building[ ] constructed with average quality materials and workmanship throughout and conforming with the base specifications used to develop the pricing [cost] schedule. Minimal to moderate architectural treatment. Average quality interior finish with adequate built-in features. Standard grade mechanical features and fixtures.

IND. ADMIN. CODE tit. 50, r. 2.1–4–3(f); *see also Clark,* 694 N.E.2d at 1235.

■ When an improvement deviates from the model and associated cost schedule used to assess the improvement, the deviation often has an effect on the reproduction cost of the improvement. *See Clark,* 694 N.E.2d at 1236–37 & n. 9; *Componx v. State Bd. of Tax Comm'rs,* 683 N.E.2d 1372, 1375 (Ind. Tax Ct.1997). The preferred method of accounting for this deviation is to use separate schedules that show the costs of certain components and features present in the model. *See* IND. ADMIN. CODE tit. 50, r. 2.1–4–3(b)–(e) (1992) (codified in present form at *id.* r. 2.2–10–6.1(b)–(e) (1996)); *Clark,* 694 N.E.2d at 1236 n. 6; *see also* IND. ADMIN. CODE tit. 50, r.

2.1–4–10 (1992) (codified in present form at *id.* r. 2.2–15–1 (1996)). This allows an assessor to adjust the base reproduction cost of the improvement objectively.[4] *See Barth, Inc.,* 699 N.E.2d at 802–03; *Clark,* 694 N.E.2d at 1236 n. 6; *Wareco Enters. v. State Bd. of Tax Comm'rs,* 689 N.E.2d 1299, 1302 (Ind. Tax Ct.1997); *Hatcher v. State Bd. of Tax Comm'rs,* 561 N.E.2d 852, 857 (Ind. Tax Ct.1990).

■ The other means of accounting for an improvement's deviation from the model used to develop the cost schedule is via an adjustment to the grade of the improvement. This type of adjustment requires the assessor's subjective judgment. *See Reams v. State Bd. of Tax Comm'rs,* 620 N.E.2d 758, 760 (Ind. Tax Ct.1993). Where possible, this type of an adjustment should be avoided. *See Clark,* 694 N.E.2d at 1236 n. 6. However, because the component (base rate adjustment) schedules are not comprehensive, this type of adjustment may be necessary. *See Hatcher v. State Bd. of Tax Comm'rs,* 601 N.E.2d 19, 21–22 (Ind. Tax Ct.1992); *see also Barth,* 699 N.E.2d at 803 n. 8.

According to Ms. Yuhan, the latter method is how the State Board accounted for the deviations of the subject improvement from the model. Upon inspecting the subject improvement, Ms. Yuhan determined that a number of components presumed to exist in the model did not exist in sections B and C of the subject improvement. (Trial Tr. at 30). She then calculated the reproduction cost of the missing components by using the component schedules. This reduced the reproduction cost of the subject improvement by about 20%. (Trial Tr. at 19). This reduction corresponded to the D grade,[5] which the State Board adopted in its final determina-

---

**3.** When the State Board fails to take relevant facts into consideration in arriving at a final determination, the final determination must be reversed. *See, e.g., Vonnegut v. State Bd. of Tax Comm'rs,* 672 N.E.2d 87, 90 (Ind. Tax Ct.1996), *review denied; cf. Loveless Constr. Co. v. State Bd. of Tax Comm'rs,* 695 N.E.2d 1045, 1049 (Ind. Tax Ct.1998) (State Board cannot disregard probative evidence offered by the taxpayer), *review denied.* However, the converse is not true. The mere fact that the State Board considered evidence in arriving at a final determination does not mean that the final determination is inviolate. *See, e.g., Zakutansky,* 696 N.E.2d at 496.

**4.** This is not to say that the cost schedules themselves are based on objective data. Recently, the Supreme Court held that cost schedules governing the 1995 general reassessment were unconstitutional because they were not based on objective data. *State Bd. of Tax Comm'rs v. Town of St. John,* 702 N.E.2d 1034 (1998). *See infra* note 15.

**5.** Under the regulations, the C grade multiplier is 100% and the D grade multiplier is 80%. *See* IND. ADMIN. CODE tit. 50, r. 2.1–4–3; *Garcia,* 694 N.E.2d at 797; *see also Zakutansky,* 696 N.E.2d at 496 n. 5; *King Indus. Corp.,* 699 N.E.2d at 342.

tion for sections B and C of the subject improvement.[6]

As for the quality of materials and workmanship, Ms. Yuhan indicated that they were not considered in arriving at the D grade, except for the metal framing and the reinforced concrete. (Trial Tr. at 33). In arriving at the D grade, Ms. Yuhan started by assuming that but for the deviations from the model, the C grade was appropriate. (Trial Tr. at 30). Ipso facto, this means that she considered the quality of the materials and workmanship to be average.

■ This is inconsistent with the State Board's final determination, which refers to the quality of materials and workmanship as being a reason for the reduction in grade. Previous decisions of this Court and the Indiana Court of Appeals have long stressed the need for the State Board to outline its reasoning in its written findings.[7] *See Barth, Inc.,* 699 N.E.2d at 802 n. 6; *Zakutansky,* 696 N.E.2d at 495 n. 2; *Loveless Constr. Co.,* 695 N.E.2d at 1050 n. 8; *Alte Salems Kirche v. State Bd. of Tax Comm'rs,* 694 N.E.2d 810, 814 n. 4 (Ind. Tax Ct.1998); *Canal Square Ltd. Partnership v. State Bd. of Tax Comm'rs,* 694 N.E.2d 801, 810 (Ind. Tax Ct.1998); *Clark,* 694 N.E.2d at 1243 n. 23; *Indianapolis Historic Partners v. State Bd. of Tax Comm'rs,* 694 N.E.2d 1224, 1226–27 n. 3; *20th Century Fiberglass v. State Bd. of Tax Comm'rs,* 683 N.E.2d 1376, 1377 (Ind. Tax Ct.1997); *Scheid v. State Bd. of Tax Comm'rs,* 560 N.E.2d 1283, 1284 (Ind. Tax Ct.1990); *State Bd. of Tax Comm'rs v. Gatling Gun Club, Inc.,* 420 N.E.2d 1324, 1329 n. 5 (Ind.Ct.App.1981); *Stokely Van Camp, Inc. v. State Bd. of Tax Comm'rs,* 182 Ind. App. 91, 394 N.E.2d 209, 211 (1979). As this case demonstrates, there is also a need for the State Board to *accurately* outline the reasons for its decisions in its written findings.

The disparity between Ms. Yuhan's explanation of how the D grade was calculated and what the State Board referred to in its final determination is troubling because it makes judicial review of the State Board's factual conclusions concerning the grading of the subject improvement difficult, if not impossible. In this case, there is no way of knowing whether the State Board determined that the quality of the materials and workmanship of sections B and C of the subject improvement were average or whether they were more consistent with the D grade.

■ In addition, the grading of the subject improvement was necessarily flawed. If Ms. Yuhan's version of how the grade of sections B and C was determined is accepted by the Court, the quality of the materials and workmanship, as is required by the regulations, could not have been taken into account in the State Board's determination of the grade of those sections. If the State Board's written findings, which refer to the quality of the materials and workmanship, are accepted as the accurate version of how the grade of sections B and C was determined, then the deviations from the model could not have been taken into account in determining the grade of those sections.[8]

■ These problems with the State Board's final determination, however, do not mandate reversal with respect to the grade issue. As the case law makes clear, State Board hearing officers do not have the duty to make a case for the taxpayer. *See Clark,* 694 N.E.2d at 1237 n. 10; *North Park Cinemas, Inc. v. State Bd. of Tax Comm'rs,* 689 N.E.2d 765, 769 (Ind. Tax Ct.1997). This means that when a taxpayer challenges a real property assessment, the State Board need not search the property to find errors, the correction of which is beneficial to the

---

6. It is unclear why Ms. Yuhan did not use a base rate adjustment instead of a grade reduction. In any event, Whitley Products does not argue the point. Hence, the Court will not discuss it further.

7. This need is all the greater when the State Board is making a subjective determination, such as the grade of an improvement.

8. This follows from an examination of how the grading system works. If an improvement con-

forms to the model and has D grade features, workmanship, and materials, then it is to be given a D grade. *See* Ind. Admin. Code tit. 50, r. 2.1–4–3(f). If that same improvement also lacks certain components presumed to exist in the model, then its grade (assuming that grade is used to account for deviations from the model) will necessarily be lower than a D. *See Clark,* 694 N.E.2d at 1237.

taxpayer. Rather, the State Board has every right to expect that any errors in an assessment will be brought to the State Board's attention by the taxpayer. *See Clark*, 694 N.E.2d at 1237 n. 10.

 Thus, where a taxpayer petitions the State Board for a review of an assessment, the State Board may limit its inquiry to only those errors raised by the taxpayer.[9] *Cf. Barth, Inc.*, 699 N.E.2d at 806–807 & nn. 17 & 19 (focusing on error raised by taxpayer and distinguishing between error raised by taxpayer and error raised by State Board). This means that all other constituent parts of the assessment, if the State Board declines to review them, will not be changed, and, as far as the law is concerned, will be deemed to be correct. This results from the Court's scope of review, which precludes the Court from considering issues and evidence not presented to the State Board. *See* IND.CODE ANN. § 33-3-5-14 (West 1996).

 In order to avoid this occurrence, a taxpayer may specifically allege that every constituent part that makes up an assessment is erroneous. This, theoretically, would place the entire assessment at issue and could have the practical effect of forcing the State Board to make a case for the taxpayer because, like any other administrative agency, the State Board must have substantial evidence to support its decisions, *see Clark*, 694 N.E.2d at 1233–35 & n. 2, and where there is no evidence in the record to support a State Board final determination, the law mandates reversal.[10] *See id.* at 1234.

 Because the law does not require such a result, it must be necessary for the taxpayer to do something more than simply allege that an error exists in an assessment at the State Board level in order to put that alleged error at issue so as to trigger the substantial evidence requirement. *See Herb v. State Bd. of Tax Comm'rs*, 656 N.E.2d 890, 893 (Ind. Tax Ct.1995) ("Allegations, unsupported by factual evidence, remain mere allegations."). Rather, the taxpayer must offer probative evidence concerning the alleged error.[11] *See id.* at 894; *see also Zakutansky*, 696 N.E.2d at 496 (evaluating evidence of grade offered by taxpayer); *Clark*, 694 N.E.2d at 1239 n. 13 (where evidence offered by taxpayer is not probative of error alleged by taxpayer, State Board properly refused to consider the evidence).

 In this case, Whitley Products did not present any probative evidence with respect to the grading of sections A, B, and C of the subject improvement. The extent of Whitley Products' case to the State Board with respect to this issue was to offer the following conclusory statement: "The subject varies from the base models described in the [regulations]. It lacks many of the construction and component features included in the base rate for both the plant and the office. A D–2 Grade more accurately reflects the quality of materials and workmanship." (Pet'rs Ex. 1 at 9). This conclusory statement does not constitute probative evidence concerning the grading of the subject improvement.[12] *See Clark*, 694 N.E.2d at 1241 n. 17. Accordingly, Whitley Products failed to

9. The State Board is empowered to review and correct errors not raised by the taxpayer if it so desires. *See* IND.CODE ANN. § 6-1.1-15-4 (West Supp.1998); *Joyce Sportswear Co. v. State Bd. of Tax Comm'rs*, 684 N.E.2d 1189, 1191 (Ind. Tax Ct.1997), *appeal dismissed*. When the taxpayer's petition is governed by IND.CODE ANN. § 6-1.1-15-12 (West Supp.1998), there are some limitations on that power. *See Barth, Inc.*, 699 N.E.2d at 806-07; *Hatcher*, 561 N.E.2d at 857.

10. The law is also clear that the State Board may not simply rely on the findings of lower assessing officials as substantial evidence. *See Loveless*, 695 N.E.2d at 1048. If it were able to do so, the State Board could point *in every case* to the fact that a lower assessing official or body determined something to be true in order to support one of the State Board's decisions. In other words, the mere fact that an assessing official or body said so would constitute the substantial

evidence needed to support a State Board final determination. This would put a taxpayer's right to judicial review at the mercy of the State Board simply deciding to go along with what was determined below.

11. With respect to obsolescence, the taxpayer faces a higher burden. This Court "will not consider taxpayer complaints concerning obsolescence in cases where the State Board holds a hearing concerning an assessment ... [after April 24, 1998], unless the taxpayer has identified the causes of the alleged obsolescence and presented probative evidence that would support a quantification of obsolescence at the administrative level." *Clark*, 694 N.E.2d at 1241.

12. Instead of offering its conclusory statement, Whitley Products could have offered specific evidence tied to the descriptions of the various

place the grading of the subject improvement at issue so as to trigger the substantial evidence standard. Therefore, the problems with respect to the State Board's grading of the subject improvement are insufficient to overturn the State Board's decision.

This may seem a somewhat harsh result because Whitley Products has demonstrated that there were flaws in the State Board's grading of the subject improvement. However, in the Court's view, it is not too much to ask that a taxpayer present probative evidence concerning the error the taxpayer alleges. To do otherwise, as stated above, would have the practical effect of forcing the State Board make a case for the taxpayer.

In this case, instead of presenting probative evidence with respect to the grading of the subject improvement at the administrative level, Whitley Products waited to attack the State Board's methodology in an original tax appeal. Although the Court was dealing with obsolescence rather than grade when it stated, "The administration of this state's property taxation system is best served by having taxpayers make detailed *factual* presentations to the State Board, the acknowledged property tax experts," *Clark,* 694 N.E.2d at 1241 (emphasis added), this statement holds true for grade as well. In addition, to allow taxpayers who present no probative evidence at the administrative level to obtain reversal of a State Board final determination would "result[ ] in a tremendous waste of time and scarce judicial resources." *Id.* Consequently, it is impossible to conclude that Whitley Products is suffering an injustice here.

▮ In reaching this conclusion the Court is well aware that Indiana's real property tax system is not a self-assessment system. *See Dav–Con, Inc. v. State Bd. of Tax Comm'rs,* 702 N.E.2d 1137, 1142–43 (1998). However, the fact that the State Board and lower assessing officials are charged with the duty of assessing property does not mean that a taxpayer may sit idly by while the State Board attempts to evaluate the taxpayer's allegation of error. *Cf. North Park Cinemas,* 689 N.E.2d at 769 ("A party who stands to be adversely affected [by a State Board final determination] has an obvious responsibility to ... present evidence and argument in support of its position.").

▮ The Court is also aware that in this case the State Board changed the determination of the BOR, rather than simply upholding the BOR. This fact is of no moment. First of all, the fact that Whitley Products presented no probative evidence concerning the grading of the subject improvement means that, despite the fact that the BOR's grading of the subject improvement was incorrect,[13] the State Board could have refused to examine the issue, thereby allowing the incorrect grading to stand. This decision, as indicated above, would not have been disturbed by the Court. However, the State Board, rather than simply refusing to examine the issue, lowered the grade of sections B and C of the subject improvement, thereby benefiting Whitley Products. Therefore, this action did not prejudice Whitley Products. Accordingly, the Court will not reverse the State Board's grading of the subject improvement, in the absence of evidence presented by the taxpayer, on this basis.

▮ In addition, to allow Whitley Products to secure a reversal because the State Board changed the BOR's determination would mean that this Court's standard of review depends on whether the State Board is changing or upholding an assessment. This is contrary to law. *See Loveless Constr. Co.,* 695 N.E.2d at 1048. This Court has but one standard by which it reviews final determinations of the State Board.[14] This standard does not change.

grade classifications. Although it is difficult to conclusively establish whether an improvement is "[dev]oid of architectural treatment" or whether an improvement has a "cheap quality interior finish with minimal built-in features" or has "substandard grade mechanical features and fixtures," this does not mean that a taxpayer is precluded from offering evidence tending to demonstrate that a given improvement has these characteristics. Once the taxpayer offers this type of evidence, it is incumbent upon the State

Board to deal with it in a meaningful manner. *See Loveless Constr. Co.,* 695 N.E.2d at 1049.

13. The fact that the State Board changed the grade conclusively proves that the BOR's determination was, for purposes of this appeal, incorrect.

14. Where the State Board changes an assessment in a manner detrimental to the taxpayer, due process concerns may require that the tax-

Whitley Products next argues that the State Board's final determination with respect to the grading of the subject improvement should be reversed because regulations governing grade fail to establish any ascertainable standards by which the Court may review the State Board's final determination. As a starting point for its analysis, the Court notes that an almost identical regulation [15] governing grade has been declared unconstitutional. *See Town of St. John,* 702 N.E.2d at 1039, *aff'g in part and rev'g in part,* 690 N.E.2d 370, 386 (Ind. Tax Ct. 1997).

However, the fact that the subject improvement was graded under an unconstitutional regulation does not mean that the assessment will be invalidated on that basis. *See Dana Corp. v. State Bd. of Tax Comm'rs,* 694 N.E.2d 1244, 1247 (Ind. Tax Ct.1998); *Town of St. John v. State Bd. of Tax Comm'rs,* 691 N.E.2d 1387 (Ind. Tax Ct.1998) (order and judgment entry), *aff'd in part, rev'd in part,* 702 N.E.2d 1034 (1998). Real property must still be assessed, and, until the new regulations are in place, must be assessed under the present system. This reality means that a taxpayer will not be able to come into court, point out the inadequacies of the present system and obtain a reversal of an assessment. *See Dana Corp.,* 694 N.E.2d at 1247. Instead, the taxpayer must come forward with probative evidence relating to the issue the taxpayer raises.[16] In this case, Whitley Products presented no probative evidence relating to the grade issue. Therefore, the Court will not reverse the State Board's determination of grade, and the Court AFFIRMS the final determination of the State Board on this issue.

## II. The Kit Adjustment

In 1991, the State Board amended its regulations to include a 50% reduction in the base rate for certain light pre-engineered or kit-type buildings. *See Barth, Inc.,* 699

N.E.2d at 803; IND. ADMIN. CODE tit. 50, r. 2.1–4–5 Schedules A1 and A2 (1992) (codified in present form at *id.* r. 2.2–11–6 (1996)) ("Deduct 50% of base price (1st floor) for preengineered kit-type structure."). Later that year, the State Board issued Instructional Bulletin 91–8 to provide guidance to assessors on how to determine which light pre-engineered buildings qualified for the reduction. *See Componx, Inc.,* 683 N.E.2d at 1374 (The fact that a building is pre-engineered does not necessarily mean that it qualifies for the kit adjustment.). Instructional Bulletin 91–8 lists several characteristics common to kit buildings, such as Cold Form Open Cee Channel wall supports, X bracing, and round steel columns. *See King Indus. Corp.,* 699 N.E.2d at 339 (describing Instructional Bulletin 91–8). According to Instructional Bulletin 91–8, the "key element in identifying this low cost economical 'kit-type' structure is the type of interior column and roof beam support." Instructional Bulletin 91–8 at 4. Instructional Bulletin 91–8 also provides assessors with "other identification clues." Instructional Bulletin 91–8 at 6; *see also King Indus. Corp.,* 699 N.E.2d at 339–40.

When a taxpayer seeks a kit adjustment, it is incumbent upon the taxpayer to offer evidence tending to show the improvement qualifies for the kit adjustment. *See King Indus. Corp.,* 699 N.E.2d at 343. If the taxpayer fails to do so, the taxpayer's claim fails. *See id.* This is not an onerous burden. Although Instructional Bulletin 91–8 is somewhat flawed, *see generally id.* at 339–41, Instructional Bulletin 91–8 outlines a large number of specific characteristics of kit buildings. Accordingly, it should not be difficult for taxpayers to identify those characteristics in an improvement alleged to qualify for the kit adjustment.

---

payer be given the opportunity to rebut the findings. *See Herb,* 656 N.E.2d at 894 n. 4.

15. The regulations declared unconstitutional were those governing the 1995 general reassessment. The regulations at issue in this case govern the 1989 general reassessment.

16. The Court will ordinarily expect that a taxpayer will come forward with a large amount of

evidence relating to the issue raised by the taxpayer. *See Clark,* 694 N.E.2d at 1234. This will allow the State Board, Indiana's assessing expert, to examine the taxpayer's claim fully and fairly. In addition, judicial review is facilitated when there is a well-developed factual record for the Court to examine. It behooves taxpayers and the State Board to keep this in mind.

In this case, the evidence presented at trial, which is presumed to be the evidence presented at the administrative level,[17] did not tend to show that the subject improvement qualified for the kit adjustment. The only evidence offered by Whitley Products consisted of photographs of the subject improvement and the testimony [18] of Ms. Yuhan who stated that the subject improvement "resembled" a kit building. (Trial Tr. at 19). (Ms. Yuhan's observation was echoed in the State Board's final determination. (State Bd. Final Determination at 2)). The photographs only showed the outside of the subject improvement and did not show any characteristics that distinguished the subject improvement from any other light pre-engineered structure. Therefore, the photographs did not tend to show that the subject improvement qualified for the kit adjustment. Similarly, Whitley Products did not make the required showing through Ms. Yuhan's testimony. Testimony that a given improvement *resembles* a kit building is not sufficient to show that the subject improvement *is* a kit building.

Because Whitley Products has failed to offer any evidence tending to show that the subject improvement qualified for the kit adjustment, the Court AFFIRMS the final determination of the State Board on this issue.

### III. Obsolescence

Via motion, the State Board has asked this Court to remand the issue of obsolescence to the State Board for further consideration. Whitley Products does not oppose this motion. The Court therefore GRANTS the State Board's motion. The issue of obsolescence is REMANDED to the State Board for proceedings not inconsistent with this Court's opinion in *Clark v. State Board of Tax Commissioners*, 694 N.E.2d 1230 (Ind. Tax Ct.1998).

---

**17.** *See Barth, Inc.*, 699 N.E.2d at 803 n. 7 (purpose of trial is to recreate record of what occurred at the administrative level).

**18.** The taxpayer may present evidence through the testimony of a State Board hearing officer without running afoul of the rule that the State Board does not have to make the taxpayer's case.

## CONCLUSION

For the aforementioned reasons, this cause is REMANDED for further proceedings not inconsistent with this opinion.

*See Wareco Enters.*, 689 N.E.2d at 1302 (evaluating factual testimony of State Board hearing officer). State Board hearing officers are fact witnesses; consequently, they are competent to testify about the underlying facts of the case. *See North Park Cinemas, Inc.*, 689 N.E.2d at 769 (discussing inquisitorial nature of State Board proceedings).