LACY DIVERSIFIED INDUSTRIES,
LTD., Petitioner,

v.

DEPARTMENT OF LOCAL GOVERN-
MENT FINANCE,[1] Respondent.

No. 49T10–0103–TA–29.

Tax Court of Indiana.

Dec. 5, 2003.

---

1. The State Board of Tax Commissioners (State Board) was originally the Respondent in this appeal. However, the Legislature abolished the State Board as of December 31, 2001. 2001 Ind. Acts 198 § 119(b)(2). Effective January 1, 2002, the Legislature created the Department of Local Government Finance (DLGF) and the Indiana Board of Tax Review (Indiana Board). IND.CODE §§ 6–1.1–30–1.1 (West Supp.2003)(eff. 1–1–02); 6–1.5–1–3 (West.Supp.2003)(eff. 1–1–02); 2001 Ind. Acts 198 §§ 66, 95. Pursuant to Indiana Code § 6–1.5–5–8, the DLGF is substituted for the State Board in appeals from final determinations of the State Board that were issued before January 1, 2002. IND CODE § 6–1.5–5–8 (West Supp.2003)(eff. 1–1–02); 2001 Ind. Acts 198 § 95. Moreover, the law in effect prior to January 1, 2002 applies to these appeals. I.C. § 6–1.5–5–8. *See also* 2001 Ind. Acts 198 § 117. Although the DLGF has been substituted as the Respondent, this Court will still reference the State Board throughout this opinion.

Larry J. Stroble, Jennifer A. Dunfee, Barnes & Thornburg, Indianapolis, IN, Attorneys for Petitioner.

Steve Carter, Attorney General of Indiana, Linda I. Villegas, Deputy Attorney General, Indianapolis, IN, Attorneys for Respondent.

FISHER, J.

Lacy Diversified Industries, Ltd. (LDI) appeals from the two final determinations of the State Board of Tax Commissioners (State Board) valuing its real property as of the March 1, 1995 and 1996 assessment dates. LDI raises three issues for the Court to consider:

I. Whether the State Board erred in assigning a "B" grade to LDI's improvement;

II. Whether the State Board erred in determining that the portion of LDI's improvement used as a parking garage is in "average" condition; and

III. Whether the State Board erred in determining that LDI's improvement was only entitled to a 15% obsolescence adjustment.

## FACTS AND PROCEDURAL HISTORY

LDI owns a nine-story office building located at 54 Monument Circle, Indianapolis, Indiana. Constructed in 1924, the building consists of both a parking garage and office space on floors one through six, and office space only on floors seven through nine. For the 1995 and 1996 assessments, the Center Township Assessor (Assessor) assessed LDI's property at $628,900. In arriving at that value, the Assessor assigned LDI's improvement a "B" grade, determined that it was in "good" condition, and awarded it a 15% obsolescence adjustment.

Believing the assessments to be too high, LDI appealed them to the Marion County Board of Review (BOR). In its appeal, LDI argued that the assigned grade factor of "B" was excessive, that the building's condition rating was too high, and that it was entitled to an additional obsolescence adjustment. After conducting hearings on each of the appeals, the BOR denied all requested relief.

LDI then appealed to the State Board via two Form 131 Petitions for Review of Assessment. After conducting a hearing on the appeals, the State Board issued two final determinations in which it lowered LDI's condition rating on the improvement from "good" to "average." [2] All other relief was denied.

On March 21, 2001, LDI initiated an original tax appeal. In lieu of a trial, the parties agreed to argue the case based on the administrative record compiled before the State Board and their briefs. This Court heard the parties' oral arguments on October 19, 2002. Additional facts will be supplied as needed.

## ANALYSIS AND OPINION

### Standard of Review

■■■ The Court gives great deference to the State Board's final determinations when it acts within the scope of its authority. *Clark v. State Bd. of Tax Comm'rs,* 742 N.E.2d 46, 48 (Ind. Tax Ct.2001), *review denied.* Accordingly, this Court reverses final determinations of the State Board only when those decisions are unsupported by substantial evidence, are arbitrary or capricious, constitute an abuse of discretion, or exceed statutory authority. *Id.* The taxpayer bears the burden of demonstrating the invalidity of the State Board's final determination. *Id.* To do so, the taxpayer must present a prima facie case, i.e., a case in which the evidence is

**2.** The change in condition rating reduced LDI's assessment from $628,900 to $565,400.

"sufficient to establish a given fact and which if not contradicted will remain sufficient." *GTE North Inc. v. State Bd. of Tax Comm'rs,* 634 N.E.2d 882, 887 (Ind. Tax Ct.1994) (citations and internal quotation marks omitted).

## Discussion

### I. GRADE

■ LDI contends that the State Board erroneously graded its property. More specifically, LDI argues that the current grade of "B" is excessive and that the grade should be reduced to "C + 1." In response, the State Board argues that LDI did not present a prima facie case that the "B" grade was improper.

■ Under Indiana's true tax value system, improvements are assigned various grades based on their design, workmanship, and quality of materials used in their construction; the grades represent multipliers that are applied to the base reproduction cost of an improvement. IND. ADMIN. CODE tit. 50, r. 2.2–10–3 (1996); *Whitley Prods., Inc. v. State Bd. of Tax Comm'rs,* 704 N.E.2d 1113, 1116 (Ind. Tax Ct.1998), *review denied.* The selection of which grade should be applied to an improvement calls for a subjective judgment and is committed to the discretion of the assessor. *Mahan v. State Bd. of Tax*

*Comm'rs,* 622 N.E.2d 1058, 1064 (Ind. Tax Ct.1993). Thus, in determining grade, the assessor must "distinguish significant variations [in an improvement's] quality and design." IND. ADMIN. CODE tit. 50, r. 2.2–10–3(a) (1996).

The State Board's regulations define the different characteristics that help assessors differentiate between grades. For instance, " 'B' grade buildings are architecturally attractive and constructed with good quality materials and workmanship. These buildings have a high quality interior finish with abundant built-in features, very good lighting and plumbing fixtures, and a custom heating and air conditioning system." IND. ADMIN. CODE tit. 50, r. 2.2–10–3(a)(2) (1996). On the other hand, " 'C' grade buildings are moderately attractive and constructed with average quality materials and workmanship. These buildings have minimal to moderate architectural treatment ... an average quality interior finish with adequate built-ins, standard quality fixtures, and mechanical features." IND. ADMIN. CODE tit. 50, r. 2.2–10–3(a)(3) (1996).[3]

■ When contesting a grade assigned to an improvement, a taxpayer must offer probative evidence concerning the alleged assessment error. *Whitley Prods.,* 704 N.E.2d at 1119. A taxpayer's

---

3. "Because structures sometimes fall between major classifications ... a method of interpolation is built into the system." IND. ADMIN. CODE tit. 50, r. 2.2–10–3(c) (1996). Therefore:

Plus or minus two (+/–2) indicates that the grade falls halfway between the assigned grade classification and the grade immediately above or below it. For example, a grade of "C + 2" indicates that the quality and design grade classification is estimated to fall halfway between "C" and "B" or average to good construction....

Plus or minus one (+/–1) indicates that the grade falls slightly above or below the as-

signed grade classification, or at a point approximately twenty-five percent (25%) of the interval between the assigned grade classification and the grade immediately above or below it. For example, a grade of "C + 1" indicates that the quality and design grade classification is estimated to be slightly better than average or approximately halfway between a "C" grade and a "C + 2" grade.

*Id.*

conclusory statements concerning the grading of a subject improvement, however, do not constitute probative evidence. *Id.* Likewise, mere references to photographs or State Board regulations, without explanation, do not qualify as probative evidence for purposes of grading issues. *Heart City Chrysler v. State Board of Tax Comm'rs,* 714 N.E.2d 329, 333 (Ind. Tax Ct.1999). If a taxpayer fails to provide the State Board with probative evidence supporting its position on a grade issue, the State Board's duty to support its final determination with substantial evidence is not triggered. *Whitley Prods.,* 704 N.E.2d at 1119–20.

In examining the evidence presented to the State Board at the administrative hearing, the Court determines that LDI has not met its burden of proof. Indeed, at the administrative hearing, LDI submitted documentation on six allegedly comparable properties in Indianapolis.[4] Specifically, LDI submitted photocopies of those properties' record cards, as well as photocopies of photographs of their buildings' exteriors. (Cert. Admin. R. at 139–177.) LDI also submitted the property record card and photographs of the subject improvement. (Cert. Admin. R. at 194–97; 215–23.) Nevertheless, LDI made little written explanation of the record cards, photographs, or comparisons of the allegedly comparable buildings to its improvement. In fact, the only written explanation provided by LDI at the administrative hearing was its "Memorandum In Support

of Assessment Reduction." It merely states:

> [T]he construction design and materials [of the subject improvement] are in the "C" range, as shown by Exhibits A through F, which are property record cards showing comparable buildings very nearly the same age as the Building. The architectural appearance and type of materials used in the construction of these buildings is similar in character, design, and architecture to the Building.

(Cert. Admin. R. at 115.)

In addition to the submitted documentation, LDI also called Mr. Scott Hokanson, Director of Operations for the building's management company, to testify at the administrative hearing. Mr. Hokanson testified:

> Q: How do the [allegedly comparable] buildings ... compare with the Property?
>
> A: [Their] character, design, and architecture are similar to the Property.
>
> Q: Given these similarities, do you think that the Property should be graded for property tax purposes in a [similar] manner ... ?
>
> A: Yes.

(Cert. Admin. R. at 126.) Later, in the administrative hearing:

> Q: [How is t]he [building at] 146 East Market ... [comparable?]

---

4. LDI alleges the following properties are comparable:

146 East Market Street: constructed in 1922; assigned a grade of "C."

155 East Market Street: constructed in 1926; assigned a grade of "C + 2."

107 North Pennsylvania: constructed in 1922; assigned a grade of "C."

108 North Pennsylvania: constructed in 1915; assigned a grade of "C."

5 East Market Street: constructed in 1929; assigned a grade of "B–1."

17 West Market Street: constructed in 1929; assigned a grade of "B–2."

(*See* Cert. Admin. R. at 115–16.)

A: The building has been vacant, and up until a couple of years ago has been reoccupied by some city agencies. They're reopening the old Pierpont Restaurant. I have not been in the building recently, but it's still comparable. It has, if I recollect, marble floors, lobbies, and they've renovated some of the upper floors for tenant occupancy.

\* \* \* \* \*

Q: [Th]e Fletcher Trust Building [located at 108 N. Pennsylvania], which is now the Ramada Inn. It was built in 1915.... Do you have anything to add?

A: I can't really comment on this building, other than it is a grand old building. I used to spend a lot of time in the Fletcher Trust Building, occupying my office. I have not toured the upper floors since the renovation of the building into a hotel. I've been in the lobbies and the first floor, though, and it's been changed into a hotel and offices.

(Cert. Admin. R. at 331–32.) And finally:

Q: [W]ould you feel that the quality of the materials of the [subject] Building is average, or would you consider the quality of the materials to be good?

A: I think it's a combination of average to good.

\* \* \* \* \*

Q: May I ask you about the design; the architectural design. How would you classify the architectural design: moderately attractive, or would you call it above average or attractive architectural character?

A: I have always been told beauty was in the eyes of the beholder. That's a tough one! To some, it's a beautiful type of building, and to others its not. And I'm going to say it[']s average to good. And, again, it's still dependent on the individual. I tend to like historical older buildings, some don't.

\* \* \* \* \*

Q: Let's move on to workmanship. Would you classify the workmanship as good workmanship, or would you classify it as average workmanship?

A: Good to average. Some areas it's good and some areas it's average.

(Cert. Admin. R. at 335–37.)

▮▮▮ Testimonial statements that a building's characteristics are "architecturally similar," or that another building "is comparable" or "a grand old building," or that the quality of a building's design and workmanship is "good to average" are nothing more than conclusions. Conclusory statements do not qualify as probative evidence. *Whitley Prods.*, 704 N.E.2d at 1119. Rather, specific reasons must be provided as to why a taxpayer believes a building is comparable, or why a building's style is "moderately attractive" as opposed to "architecturally attractive."[5] This was not done in this case, and the State

---

5. This Court has previously held that, in many ways, the State Board's regulations regarding grade "are so subjective as to be unclear." *Town of St. John v. State Bd. of Tax Comm'rs*, 690 N.E.2d 370, 386 (Ind. Tax Ct.1997), *rev'd in part on other grounds by* 702 N.E.2d 1034 (Ind.1998). Nevertheless, it expects taxpayers who are appealing a grade issue to do more than merely regurgitate the language found in the regulations when presenting their case. Rather, taxpayers are expected to present specific reasons as to why they think, for instance, a building's style is "moderately attractive" as opposed to "architecturally attractive." Those reasons may be based on the taxpayer's subjective judgment.

Board's duty to support its final determination with substantial evidence is therefore not triggered. *See id.* at 1119–20. Accordingly, the State Board's determination of a "B" grade on the subject improvement is therefore affirmed.

## II. CONDITION

Under Indiana's true tax value system, improvements are also assigned physical depreciation adjustments. The amount of the adjustment is expressed as a percentage and is based on an improvement's age, condition, and structure type. *See* IND. ADMIN. CODE tit. 50, r. 2.2–10–7(d) (1996).

 Condition represents an improvement's remaining usefulness. IND. ADMIN. CODE tit. 50, r. 2.2–10–7(b) (1996). To estimate an improvement's condition, the assessor must observe the amount of physical deterioration (i.e., "wear and tear") relative to the age of the improvement, as well as the degree of both maintenance and modernization to the improvement.[6] *See id.* The assessor then assigns the improvement one of nine levels of condition, ranging from "excellent" to "no value." IND. ADMIN. CODE tit. 50, 2.2–10–5(d)(8)(A)–(I) (1996). For instance, a condition rating of "average" means "the structure is in average condition relative to its age, or the condition in which it would

normally be expected." IND. ADMIN. CODE tit. 50, 2.2–10–5(d)(8)(D)(1996). In contrast, a condition rating of "poor" means "the structure is in poor condition relative to its age. The degree of deterioration is significantly worse than would normally be expected." IND. ADMIN. CODE tit. 50, 2.2–10–5(d)(8)(F)(1996).

 LDI contends that the State Board erred in assigning the parking garage portion of its building a condition rating of "average." To support its claim, LDI submitted, at the administrative hearing, photocopies of photographs of the parking garage that illustrated specific examples of the physical deterioration present in its improvement.[7] (Cert. Admin. R. at 208–11, 258–62.) In addition, LDI provided a summary of the actual costs it paid to restore/repair the physical deterioration in the parking garage.[8] (Cert. Admin. R. at 269, 341.) This evidence, LDI argues, establishes a prima facie case that the condition rating for the garage portion of its building should be "poor." The Court disagrees.

LDI's evidence demonstrates that its improvement was suffering from physical deterioration. LDI's evidence also demonstrates how much it spent in repairing that physical deterioration. The evidence, however, is silent with respect to how the

---

6. "Maintenance is the general upkeep of existing characteristics. Modernization refers to corrective measures that are taken to bring the building in conformity with change in style or technology. It requires replacing parts of the building with modern replacements of the same kind." IND. ADMIN. CODE tit. 50, r. 2.2–10–7(b) (1996).

7. The photographs reveal deterioration to the parking garage's floor and wall concrete, as well as indicate separations in the concrete beams. (*See* Cert. Admin. R. at 208–11; 258–62.)

8. LDI spent $746,000 to cure the physical deterioration in its building. LDI explains that the difference in depreciation between the "poor" and "average" condition ratings is 15% of the improvement's total reproduction cost, which, in this case, is $212,579. LDI asserts that because the $746,000 greatly exceeds the $212,579, it established a prima facie case that the condition rating should be reduced to "poor." (*See* Oral Argument Tr. at 12–13.)

physical deterioration *related* to the age of the improvement. Indeed, there is no explanation as to how the specific types of physical deterioration it was suffering from were not typical to a 70 year-old structure, nor is there an explanation as to how the physical deterioration was significantly worse than would normally be expected. *See* 50 IAC 2.2–10–5(d)(8)(D); 50 IAC 2.2–10–5(d)(8)(F). Consequently, the State Board's final determination with respect to LDI's condition issue is affirmed.

### III. OBSOLESCENCE

 Finally, LDI contends that the 15% obsolescence adjustment awarded by the State Board to its improvement is in error. LDI is correct.

 "Obsolescence, which is a form of depreciation, is defined as a loss of value and classified as either functional or economic." *Freudenberg–NOK Gen. P'ship v. State Bd. of Tax Comm'rs*, 715 N.E.2d 1026, 1029 (Ind. Tax Ct.1999), *review denied. See also* IND. ADMIN CODE tit. 50, r. 2.2–10–7(e)(1996). Functional obsolescence is caused by factors internal to the property and is evidenced by conditions within the property itself. *See* 50 IAC 2.2–10–7(e). Economic obsolescence is caused by factors external to the property. *Id.* The State Board's regulations cite several examples of causes of obsolescence, such as limited use or excessive material and product handling costs due to an irregular or inefficient floor plan (functional) and the decreased market acceptability for which the property was constructed (economic). *Id.*

This Court has explained that when a taxpayer seeks an obsolescence adjustment, it must make a two-pronged showing. *See Clark v. State Bd. of Tax Comm'rs*, 694 N.E.2d 1230, 1238 (Ind. Tax Ct.1998). First, the taxpayer must identify specific factors that are causing, or have caused, its improvement to suffer a loss of value. *See id.* Only after this showing does the taxpayer proceed to the second prong: quantifying the amount of obsolescence to be applied.[9] *See id.*

 It is important to recognize, however, that each of these prongs requires a connection to an actual loss in property value. For example, when identifying factors that cause obsolescence, a taxpayer must show, through the use of probative evidence, that these factors are causing an *actual* loss of value to its property.[10] *See Miller Structures, Inc. v. State Bd. of Tax Comm'rs*, 748 N.E.2d 943, 954 (Ind. Tax Ct.2001). Furthermore, when a taxpayer quantifies the amount of obsolescence to which it believes it is entitled, it is required, through the use of professional appraisal techniques, to convert that *actual* loss of value (shown in the first prong) into a percentage reduction and apply it against the improvement's overall value. *See Clark*, 694 N.E.2d at 1238.

During the administrative hearing, LDI claimed that its improvement suffered from both functional and economic forms of obsolescence. More specifically, LDI complains: the building has only two elevators, as opposed to three or four (resulting in an inconvenience for the building's

---

9. Indeed, "[w]here there is no cause of obsolescence, there is no obsolescence to quantify." *Lake County Trust v. State Bd. of Tax Comm'rs*, 694 N.E.2d 1253, 1257 (Ind. Tax Ct.1998), *review denied.*

10. In the commercial context, this loss of value usually means a decrease in the property's income generating ability. *See Miller Structures, Inc. v. State Bd. of Tax Comm'rs*, 748 N.E.2d 943, 953 (Ind. Tax Ct.2001).

tenants); the building has an oddly-shaped floor plan (resulting in an inefficient use of tenant space); the parking garage occupies a portion of floors one through six (disrupting the flow and usefulness of the space existing on the floors); the floors are not large enough for most corporate tenants (requiring the tenants to occupy more than one floor); and the parking garage is so small (with approximately 81 parking spaces total) as to render it inadequate. (Cert. Admin. R. at 118–19.)

Furthermore, LDI explains that as of May 1, 1996, its building was 44% vacant. Such a vacancy rate "resulted in a[ ] shortfall of income from a fully-occupied building." (Cert. Admin. R. at 119.) LDI also complains that but for its improvement's inadequacies, it would be able to command rents comparable to those charged in more modern downtown facilities. (Cert. Admin. R. at 119.)

■ In turn, LDI claims that the loss of value resulting from its improvement's inadequacies translates into an obsolescence adjustment of between 39% and 48%. As support, LDI presented two separate approaches for determining the fair market value of the property—the income capitalization approach and the cost approach.[11]

■ Under the income capitalization approach, the income expected to be earned by the subject property is estimated, allowing for reasonable expenses, va-

cancy, and/or collection loss, to arrive at net operating income (NOI). The NOI is subsequently converted to a present value by dividing it by a capitalization rate. *See* AM. INST. OF REAL ESTATE APPRAISERS, THE APPRAISAL OF REAL ESTATE, 409–17 (10th ed.1992). The capitalization rate generally reflects the annual rate of return necessary to attract investment capital and is influenced by such factors as "apparent risk, market attitudes toward future inflation, the prospective rates of return for alternative investments, the rates of return earned by comparable properties in the past, the supply of and demand for mortgage funds, and the availability of tax shelters." *Id.* at 417. In the instant case, LDI determined that its improvement's annual potential gross income was $819,056. (*See* Cert. Admin. R. at 318.) It subsequently allowed for a 5% vacancy loss, deducted fixed and variable expenses, to arrive at a NOI of $353,984. (Cert. Admin. R. at 318.) Then, LDI applied a capitalization rate of 11% to its NOI, and determined that the improvement's fair market value was $3,218,036. (Cert. Admin. R. at 318.)

■ Under the cost approach to market value, the cost to construct a reproduction of the existing structure is estimated, deducting all accrued depreciation in the property. THE APPRAISAL OF REAL ESTATE at 321. Depreciation is the loss of value from *all* sources: functional and external obsolescence, as well as physical depreciation.[12] *Id.* at 343. In its cost approach, LDI

---

11. In 1995 and 1996, Indiana did not assess property on the basis of its fair market value. Nonetheless, "[the determination of] obsolescence [under Indiana's true tax value system] obviously incorporates market value concepts. Therefore, a market value estimate is appropriate in the context of obsolescence. There is really no choice in this matter: the Court (and taxpayers) must accept quantifications

... [that] use market concepts." *Canal Square Ltd. P'ship v. State Bd. of Tax Comm'rs,* 694 N.E.2d 801, 806 n. 8 (Ind. Tax Ct.1998).

12. Indiana's property assessment regulations also require the recognition of obsolescence and ties the definition of obsolescence directly to that applied by professional appraisers un-

determined that the total cost to construct a reproduction improvement was $9,756,652. (*See* Cert. Admin. R. at 282.) LDI then deducted the amount of physical depreciation the improvement had experienced ($4,488,060). (*See* Cert. Admin. R. at 319.) Thus,[9] LDI concluded that the reproduction cost of its improvement after physical depreciation was $5,268,592. (*See* Cert. Admin. R. at 319.)

LDI's next step was to quantify the effect of the sources of obsolescence (described *supra*) as representing a loss of value in the property compared to its estimated reproduction cost (after deduction for physical depreciation). To arrive at this amount, LDI correlated the cost approach with the figures it derived under the income capitalization method: the difference between the reproduction cost of the property after physical depreciation and the value of the property as determined by the income capitalization method was attributed to obsolescence. In so doing, LDI computed the amount of obsolescence present in its improvement to be $2,050,556, or 39% of the total reproduction cost of the improvement (after physical depreciation). (Cert. Admin. R. at 314.) Accordingly, LDI contends that it is appropriate to apply, at a minimum, a 39% obsolescence reduction against its true tax value.[13] As this Court has previously held, this is a valid methodology for estimating obsolescence. *Canal Square Ltd. P'ship v. State Bd. of Tax Comm'rs*, 694 N.E.2d 801,

807 (Ind. Tax Ct.1998). *See also Thorntown Tel. Co., Inc. v. State Bd. of Tax Comm'rs*, 588 N.E.2d 613, 619 (Ind. Tax Ct.1992) (stating that one technique to quantify obsolescence is to compare the replacement cost new, less physical deterioration, of an improvement with the value of the property estimated under the income approach.)

Nevertheless, the State Board denied LDI's request for additional obsolescence on the basis that it was "confused" by LDI's calculations. More specifically, the State Board became confused when LDI submitted the second income capitalization approach because it utilized a different rental income per square foot. (*See* Cert. Admin. R. at 82.) *See also* footnote 13, *supra*. As a result, the State Board determined that LDI "manipulated the data to such a degree that [its] argument must be determined to be unsubstantiated." (Cert. Admin. R. at 83.) The Court disagrees.

LDI's methodology for estimating its entitlement to an additional obsolescence adjustment is valid. *See Canal Square*, 694 N.E.2d at 807. These calculations indicate that LDI should receive an obsolescence adjustment of at least 39%. Consequently, it was up to the State Board to rebut LDI's prima facie case and deal with LDI's evidence in a meaningful manner. *See Clark*, 694 N.E.2d at 1235. Instead, it rejected the evidence because it was confused and, because it was confused, "the evidence must have been manipulated."

der the cost approach. *See id.* at 806–07; IND. ADMIN. CODE tit. 50, r. 2.2–10–7 (1996); AM. INST. OF REAL ESTATE APPRAISERS, THE APPRAISAL OF REAL ESTATE, 343–65 (10th ed.1992).

**13.** LDI also submitted an alternate income capitalization approach—one in which it used a lower rent per square foot, which resulted in a lower NOI. (*See* Cert. Admin. R. at 314, 320.) The resulting analysis indicates

an obsolescence adjustment of 48%. (*See* Cert. Admin. R. at 314, 321.) In contrast to its explanation for the rental rate in the first calculation (*see* Cert. Admin. R. at 346), however, LDI's explanation supporting the use of the lower rent per square foot in this second calculation is inadequate. (*See* Cert. Admin. R. at 346.)

This Court will not uphold a State Board decision rejecting a taxpayer's evidence when the State Board fails to make any findings that the evidence is inaccurate or unreliable. *See Canal Square*, 694 N.E.2d at 807 (citations omitted).

## CONCLUSION

For the aforementioned reasons, the Court AFFIRMS the State Board's final determination on Issues I and II. The Court, however, REVERSES the final determination with respect to Issue III. Consequently, Issue III is REMANDED to the Indiana Board of Tax Review[14] in order to instruct the local assessing officials to award LDI's improvement with a 39% obsolescence adjustment.

---

**14.** All cases that would have been remanded to the State Board are now remanded to the Indiana Board of Tax Review (Indiana Board). IND.CODE § 6–1.1–15–8 (West Supp. 2003). Final determinations made by the Indiana Board are subject to review by this Court pursuant to IND.CODE § 6–1.1–15. IND. CODE §§ 6–1.5–5–7 (West Supp.2003); 3–33–5–2.

