**REGENCY CANTERBURY, LP, Petitioner,**

v.

**DEPARTMENT OF LOCAL GOVERNMENT FINANCE,[1] Respondent.**

**No. 49T10–0111–TA–97.**

Tax Court of Indiana.

Dec. 5, 2003.

---

**1.** The State Board of Tax Commissioners (State Board) was originally the Respondent in this appeal. However, the legislature abolished the State Board as of December 31, 2001. 2001 Ind. Acts 198 § 119(b)(2). Effective January 1, 2002, the legislature created the Department of Local Government Finance (DLGF), *see* Indiana Code § 6–1.1–30–1.1 (West Supp.2003) (eff. 1–1–02); 2001 Ind. Acts 198 § 66, and the Indiana Board of Tax Review (Indiana Board). IND.CODE § 6–1.5–1–3 (West Supp.2003) (eff. 1–1–02); 2001 Ind. Acts 198 § 95. Pursuant to Indiana Code § 6–1.5–5–8, the DLGF is substituted for the State Board in appeals from final determinations of the State Board that were issued before January 1, 2002. IND.CODE § 6–1.5–5–8 (West Supp.2003) (eff. 1–1–02); 2001 Ind. Acts 198 § 95. Nevertheless, the law in effect prior to January 1, 2002 applies to these appeals. I.C. 6–1.5–5–8. *See also* 2001 Ind. Acts 198 § 117. Although the DLGF has been substituted as the Respondent, this Court will still reference the State Board throughout this opinion.

James W. Beatty, Stephen M. Terrell, Landman & Beatty, Indianapolis, IN, Attorneys for Petitioner.

Steve Carter, Attorney General of Indiana, Robert B. Wente, Deputy Attorney General, Indianapolis, IN, Attorneys for Respondent.

FISHER, J.

Regency Canterbury, LP (Canterbury) appeals the State Board of Tax Commissioners' (State Board) final determination valuing its real property for the 2000 tax year. The issue for the Court to decide is whether the State Board erred when it refused to reduce the grade factor on Canterbury's 12 apartment buildings (buildings). For the following reasons, the Court REVERSES the State Board's final determination.

### FACTS AND PROCEDURAL HISTORY

Canterbury owns the Canterbury Apartment Complex located in Fort Wayne, Indiana. Canterbury's complex consists of 12 two- and three-story apartment buildings with wood joist construction. For the 2000 assessment year, the local assessing officials valued the buildings from the General Commercial Residential (GCR) Schedule–apartment model and graded them a "C+1." Canterbury appealed its assessments with the Allen County Property Tax Assessment Board of Appeals (PTABOA); the PTABOA denied Canterbury's appeal.

Canterbury then appealed its assessments to the State Board, alleging that the base value of its buildings should have been reduced to reflect a variation from the GCR model and that its buildings should have been graded a "C." On October 12, 2001, following an administrative

hearing, the State Board issued a final determination adjusting Canterbury's assessments to reflect the buildings' deviation from the GCR model. The State Board, however, denied Canterbury's requested grade reduction.

On November 21, 2001, Canterbury initiated an original tax appeal. On September 9, 2002, this Court heard the parties' oral arguments. Additional facts will be supplied as necessary.

## ANALYSIS AND OPINION

### Standard of Review

 This Court gives great deference to the final determinations of the State Board when it acts within the scope of its authority. *Hamstra Builders, Inc. v. Dep't of Local Gov't Fin.*, 783 N.E.2d 387, 390 (Ind. Tax Ct.2003). Thus, this Court will reverse a final determination of the State Board only when its findings are unsupported by substantial evidence, arbitrary, capricious, constitute an abuse of discretion, or exceed statutory authority. *Id.* When appealing to this Court from a State Board final determination, the taxpayer bears the burden of showing that the final determination is invalid. *Id.*

### Discussion

 Canterbury asserts that, while the State Board properly adjusted the base rate of its buildings to reflect their deviation from the GCR model, it erred when it failed to reduce the grade. Canterbury is correct.

Under Indiana's property assessment system, assessors use improvement models and cost schedules to determine the base reproduction cost of a particular improvement. *See Whitley Prods., Inc. v. State Bd. of Tax Comm'rs*, 704 N.E.2d 1113, 1116 (Ind. Tax Ct.1998), *review denied.* These models and schedules reflect the reproduction costs of improvements using typical construction materials. IND. ADMIN. CODE tit. 50, r. 2.2–10–6.1(a)(1) (1996). Improvements are then assigned various grades based on the quality of design, workmanship, and materials used in their construction. *Whitley Prods.*, 704 N.E.2d at 1116. For instance, " "C" grade buildings are moderately attractive and constructed with average quality materials and workmanship. These buildings have minimal to moderate architectural treatment ... an average quality interior finish with adequate built-ins, standard quality fixtures, and mechanical features." IND. ADMIN. CODE tit. 50, r. 2.2–10–3(a)(3) (1996).[2] The grades represent multipliers that are applied to the subject improvement's base reproduction cost, accounting for variations in standards of quality and design. *Whitley Prods.*, 704 N.E.2d at 1116. *See also* IND. ADMIN. CODE tit. 50, r. 2.2–10–6.1(f) (1996).

---

2. "Because structures sometimes fall between major classifications ... a method of interpolation is built into the system." IND. ADMIN. CODE tit. 50, r. 2.2–10–3(c) (1996). Therefore: Plus or minus two (+/− 2) indicates that the grade falls halfway between the assigned grade classification and the grade immediately above or below it.

\* \* \* \* \* \*

Plus or minus one (+/− 1) indicates that the grade falls slightly above or below the assigned grade classification, or at a point approximately twenty-five percent (25%) of the interval between the assigned grade classification and the grade immediately above or below it.

*Id.*

There are times, however, when an improvement deviates from the applicable improvement model or cost schedule; in turn, the deviation impacts the improvement's base reproduction cost. *Whitley Prods.*, 704 N.E.2d at 1117. As this Court has previously explained, there are two methods by which to account for an improvement's deviation from the applicable model or cost schedule:

> The preferred method ... is to use separate schedules that show the costs of certain components and features present in the model. This method allows an assessing official to make an objective adjustment to the improvement's base rate. Another method to account for an improvement's deviation is application of a grade adjustment. Where possible, this type of an adjustment should be avoided because it requires an assessing official's subjective judgment. However, because the component (base rate adjustment) schedules are not comprehensive, this type of adjustment may be necessary.

*Clark v. State Bd. of Tax Comm'rs*, 742 N.E.2d 46, 49 (Ind. Tax Ct.2001) (internal quotations and citations omitted).

In its final determination, the State Board concluded that it did not need to reduce Canterbury's grade "because [ ] *Clark* [ ] mandated [the] use of the unit-in-place tables for a base cost adjustment instead of a grade adjustment." (Cert. Admin. R. at 1096.) The State Board's interpretation of *Clark*, however, is erroneous.

■ Nowhere in the *Clark* opinion does this Court state that grade adjustments in general are precluded when a base rate adjustment has been made. Specifically, the Court held that, *where an improvement deviates from the model*, "if the unit-in-place tables are used [which is the preferred method], the missing items cannot [also] be the basis for the lowering of the subject units' grade[.]" *Clark*, 742 N.E.2d at 49. Thus, when an improvement deviates from the model, grade adjustments are inappropriate when base rate adjustments can be made.

■ In this case, however, Canterbury sought two distinct adjustments to its property tax assessment: 1) a base rate adjustment to account for the lack of concrete back-up walls; and 2) a grade reduction based on the overall quality of design and materials used to construct its buildings.[3] Accordingly, with regard to Canterbury's first issue, the State Board did not err when it adjusted the base rate—per *Clark*—by using the unit-in-place tables to subtract the value of concrete back-up walls presumed in the model. (*See* Cert. Admin. R. 1096.) However, the State Board did err in failing to consider Canterbury's evidence with regard to the separate issue of grade. Consequently, the State Board's final determination cannot stand.

### CONCLUSION

For the reasons stated above, the Court REVERSES the final determination of the

---

**3.** In its appeal before the State Board, Canterbury alleged that 1) "[g]rade and design factor should be reduced from "C + 1" [ ] to "C" ... based upon Grade and Design factor[s] utilized in assessing comparable properties in Allen County[ ]" and 2) "[t]he base price should be adjusted due to the lack of concrete block back-up for exterior walls." (Cert. Admin. R. at 7, 103, 178, 223, 268, 314, 371, 410, 455, 490, 528, 561.) (*See also* Cert. Admin. R. at 1284.) The State Board, in its final determination, however, stated the issues as "[t]he petition for review sought a grade reduction from "C + 1" to "C" due to the lack of a concrete block back-up wall. (Cert. Admin. R. at 1079.)

State Board and REMANDS it to the Indiana Board of Tax Review (Indiana Board) [4] to instruct the local assessing officials to consider Canterbury's request for a grade reduction, consistent with this opinion.

4. All cases that would have been remanded to the State Board are now remanded to the Indiana Board of Tax Review (Indiana Board). IND.CODE § 6–1.1–15–8 (West Supp. 2003). Final determinations made by the Indiana Board are subject to review by this Court pursuant to IND.CODE § 6–1.1–15. IND. CODE §§ 6–1.5–5–7 (West Supp.2003); 3–33–5–2.